```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ROBERT HAMLEN,                                                :
                Plaintiff,                                    :
                                                              :      OPINION AND ORDER
v.                                                            :
                                                              :      16 CV 3526 (VB)
GATEWAY ENERGY SERVICES                                       :
CORPORATION,                                                  :
                Defendant.                                    :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Robert Hamlen brings this putative class action against Gateway Energy Services Corporation claiming violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. STAT. ANN. § 56:8-1 (West); breach of contract; breach of the implied covenant of good faith and fair dealing; and unjust enrichment, alleging defendants used deceptive pricing practices to charge thousands of New Jersey customers higher rates for natural gas.

Now pending is defendant's motion to dismiss.  (Doc. #14).

For the reasons set forth below, the motion to dismiss is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

## BACKGROUND

In deciding the pending motion, the Court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in plaintiff's favor.

Plaintiff is a New Jersey citizen who purchased natural gas from defendant from November 2010 to January 2016.  Defendant is a New York corporation that sells retail electricity and natural gas to commercial and residential consumers in New Jersey, among other areas.

1

In September 2010, plaintiff was a customer of New Jersey Natural Gas ("NJNG"), a different retailer, when he spoke with defendant's representative via telephone. The representative recited defendant's standard sales pitch for its variable-rate natural gas plan, stating "your price of . . . natural gas will be a variable rate set by Gateway Energy based on market conditions and will fluctuate monthly." (Compl. ¶ 15). Subsequent to this conversation, defendant provided plaintiff with the contract.

There are three contract clauses relevant to this case. First, the "Variable-Rate Plan" clause provides:

> The price for all electricity or natural gas sold under our Variable-Rate Plan is a rate set by us each month based on our evaluation of a number of factors that affect the total price of electricity or natural gas to a customer. The following description is not exhaustive of all factors that may influence our pricing decision each month, but it does describe the major components that influence our analysis in a typical month. Each month our management uses the information described below, along with numerous other considerations, to determine how low a price we can charge in the upcoming month.
>
> - We determine the cost of all electricity or natural gas (including, where applicable, transmission costs, storage costs, transportation costs and line losses) that we have already obtained for delivery to customers in your utility territory for the upcoming month. Because we often acquire supply over time in preparation for future delivery needs (in an effort to mitigate the volatility in price) and do not acquire all of our required electricity or natural gas from the spot market, our supply costs may not directly follow spot market prices.
>
> - If additional supplies of electricity or natural gas will be required for the upcoming month, we will determine the anticipated cost to acquire such additional supplies from the spot market.
>
> - If we expect to have surplus supply for the upcoming month, we evaluate the expected income we may receive from selling the surplus. Additionally, with electricity, we may expect to have surplus or shortfall in any given hour of the upcoming month. In this case, we evaluate the expected income or costs that may be incurred by eliminating the surplus or shortfall.
>
> - We evaluate, if known, the prices that your utility and other competitors in your area plan to charge in the upcoming month.

- We evaluate the amount of profit we hope to earn from the sale of electricity or natural gas in your utility territory.

- We evaluate any taxes that must be included in the rate we charge for electricity or natural gas in your jurisdiction.

- From time to time, and as a direct result of sudden or drastic increases in price, we may experience a higher level of cost to supply our customers than we wish to bill our customers in a single period.  In these circumstances, we may amortize this expense to our customers over multiple billing cycles.

(Compl. Ex. A).

Second, the "No Warranties" clause provides:

We provide no warranties, express or implied, and we specifically disclaim any warranty of merchantability or fitness for a particular purpose.  Additionally, unless expressly stated otherwise on your Enrollment Consent, we specifically disclaim any warranty or guaranty that the price charged by us for the energy supplied pursuant to the Agreement will be lower than the price that you would have been charged by the utility or another third-party supplier.

(Id.).

And third, the "Governing Law" clause provides that the contract "is made and shall be construed in accordance with the laws of the State of New Jersey."  (Id.).

Hoping to lower his natural gas bill, plaintiff switched from NJNG to defendant in November 2010.  However, defendant charged "rates [that were] substantially higher than other [independent retailers] or local utilities."  (Compl. ¶ 14).  Defendant's rates were higher than NJNG's rates every month for a four-and-a-half-year period while plaintiff was defendant's customer.  Some months, defendant's rates were more than double NJNG's rates.  Defendant often increased its rates during periods when wholesale and NJNG's rates decreased.  The complaint sets forth the rates charged by defendant, NJNG, and "New Jersey City Gate" from November 2010 to January 2016, omitting one

3

month.  Plaintiff alleges the New Jersey City Gate rate represents the wholesale natural gas rate.

## DISCUSSION

I.  Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

II.  Procedural History

This action was commenced May 11, 2016.  On July 6, 2016, defendant filed the instant motion to dismiss.  (Doc. ##9-10).[1]  The next day, the Court sua sponte granted plaintiff leave to

---

[1] Due to a technical filing error, the motion was subsequently refiled.  (Doc. #14).

4

file an amended complaint and stated that "[i]f plaintiff elects not to file an amended complaint, the motion to dismiss will proceed in the regular course and, absent special circumstances, no further opportunities to amend will be granted." (Doc. #12). On July 15, 2016, plaintiff declined the opportunity to file an amended complaint. (Doc. #13).

III.     New Jersey Consumer Fraud Act

To state a claim under the NJCFA, plaintiff must plausibly allege: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009). Simple breach of contract is insufficient to state a NJCFA claim; plaintiff must allege "substantial aggravating circumstances." Windley v. Starion Energy, Inc., 2016 WL 197503, at *2 (S.D.N.Y. Jan. 8, 2016) (quoting Suber v. Chrysler Corp., 104 F.3d 578, 587 (3d Cir. 1997)). When, as here, "the parties' relationship is governed by a valid contract, a court may dismiss a claim under the [NJCFA] if the defendant's allegedly unlawful conduct is expressly authorized by the terms of the parties' agreement." Windley v. Starion Energy, Inc., 2016 WL 197503, at *2.

Plaintiff claims defendant made false, deceptive, and misleading statements related to its variable-rate plan. Specifically, plaintiff argues defendant misled him to believe defendant's rates would "be competitive with other suppliers in the market and that the prices would in fact reflect [defendant's] wholesale costs as well as market conditions." (Pl.'s Opp'n at 7).

Here, the contract expressly authorizes defendant to set its rate "based on [its] own evaluation of a number of factors that affect the total price of . . . natural gas to a customer" (Compl. Ex. A), and expressly disclaims that the rate would be lower than competitors' rates. Although the contract states defendant would consider market conditions, it also provides that

5

defendant would consider a non-exhaustive list of other factors. Thus, plaintiff agreed to allow defendant discretion in setting the rate for natural gas without a promise of a lower rate than competitors' rates.

That defendant exercised its discretion to set rates higher—even substantially higher—than the wholesale market or other retail providers is not a sufficiently "substantial aggravating" circumstance to state a valid NJCFA claim. See, e.g., Windley v. Starion Energy, Inc., 2016 WL 197503, at *2 (dismissing plaintiff's NJCFA claim when defendant verbally represented, falsely, that plaintiff would save money on its energy bill); Urbino v. Ambit Energy Holdings, LLC, 2015 WL 4510201, at *3–5 (D.N.J. July 24, 2015) (same).

Accordingly, plaintiff's NJCFA claim is dismissed.

IV.     Breach of Contract

Under "New Jersey law, a breach of contract claim requires proof of three elements: (1) the existence of a valid contract; (2) a breach of that contract; and (3) resulting damage to the plaintiff." RNC Sys., Inc. v. Modern Tech. Grp., 861 F. Supp. 2d 436, 444–45 (D.N.J. 2012).

Plaintiff claims defendant breached the contract because it failed to "set its variable rates based on factors disclosed in the cont[r]act, in particular, [defendant's] cost for natural gas" (Pl.'s Opp'n at 14), and other market conditions.

The Court disagrees.

Plaintiff provides only conclusory allegations that defendant failed to base its rates on its cost for natural gas or market conditions. Plaintiff's only specific non-conclusory allegation is that defendant charged more than competitors or the wholesale rate. But that does not plausibly state that defendant failed to consider its own natural gas costs or market conditions.

First, plaintiff conflates wholesale rates with defendant's natural gas costs. Indeed, plaintiff's allegations demonstrate why wholesale prices do not necessarily equate or determine defendant's costs. As plaintiff states, defendant could buy natural gas wholesale, either in advance or on the spot market, produce its own supply, or contract from other brokers. Moreover, retailers often seek to offset market volatility through futures contracts, which could also impact defendant's costs. Plaintiff does not plead how defendant filled its supply needs. Thus, plaintiff improperly equates wholesale rates with defendant's natural gas cost.

Second, as the parties agreed, defendant was to evaluate a non-exhaustive list of factors, including its cost of natural gas, in determining the rate to charge plaintiff. Plaintiff provides no allegations regarding the other factors that legitimately might have impacted that evaluation.

Plaintiff's non-conclusory allegations do not plausibly suggest defendant failed to evaluate its natural gas costs and market conditions in setting the price it charged. That defendant's rates do not track wholesale or competitors' rates is not sufficient to allege a breach of the contract. The contract expressly granted defendant discretion to set rates based on many other factors, and allegations regarding these factors are not present in the complaint.

Accordingly, plaintiff's breach of contract claim is dismissed.

V.    Breach of the Implied Covenant of Good Faith and Fair Dealing

"[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997). "Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term." Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001). Importantly, New Jersey law recognizes the validity of claims for breach

of the implied covenant when the claim is based on allegations the defendant abused discretion the contract expressly granted.  <u>See</u>, <u>e.g.</u>, <u>id</u>. at 250.

The New Jersey Supreme Court has made clear the test for determining whether a defendant has breached the implied covenant:

> [A] party exercising its right to use discretion in setting price under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract.

<u>Wilson v. Amerada Hess Corp.</u>, 168 N.J. at 251.  To plead breach of the implied covenant, plaintiff must allege facts of defendant's bad faith or improper motive.  <u>Id</u>.  This requirement can be satisfied by allegations that defendant violated the standard of commercial reasonableness.  <u>Id</u>. at 253.

Here, plaintiff has sufficiently alleged defendant acted in bad faith by exercising its discretion to charge unreasonable rates to profiteer off its customers, who reasonably expected to pay defendant competitive prices for natural gas.  Defendant's rates were substantially higher than its competitors' rates.  For example, defendant charged a higher rate than NJNG every month and sometimes charged more than double.  That defendant's rates varied from the competition so significantly and did not react to other indicators of market conditions suggests that defendant exercised its discretion in bad faith or with improper motive.

Defendant contends the contract provides for it to consider, among the factors, its own profit.  Of course, defendant's profit is an appropriate consideration in setting the price for natural gas.  However, the implied covenant of good faith and fair dealing requires defendant to seek a profit that is commercially reasonable.  Plaintiff has sufficiently pleaded that defendant plausibly charged commercially unreasonable rates, and in so doing acted in bad faith or with

improper motive.  See, e.g., Transcript of Motion Hearing at 20–29, Steketee v. Viridian Energy, Inc., No. 15-585 (D. Conn. Dec. 2, 2015) (applying New Jersey law and denying motion to dismiss breach of the implied covenant claim, based on similar facts) (Doc. #17-3); Komoda v. Palmco Energy, No. L-3263-14 (N.J. Super. Ct. Civ. Div. Sept. 19, 2014) (Doc. #17-4).

Accordingly, the Court declines to dismiss plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

VI.    Unjust Enrichment

Defendant argues plaintiff's unjust enrichment claim must be dismissed because New Jersey law does not allow such claims when a valid contract governs the relationship.  Plaintiff does not contest this argument, and defendant correctly states New Jersey law.  See, e.g., Van Orman v. Am. Ins. Co., 680 F.2d 301, 310–11 (3d Cir. 1982); St. Paul Fire & Marine Ins. Co. v. Indem. Ins. Co. of N. Am., 32 N.J. 17, 21–23 (1960).

Accordingly, plaintiff's unjust enrichment claim is dismissed.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART. It is GRANTED as to plaintiff's claims for (i) violation of the NJCFA, (ii) breach of contract, and (iii) unjust enrichment. It is DENIED as to plaintiff's claim for breach of the implied covenant of good faith and fair dealing, plaintiff's only surviving claim.

The Clerk is instructed to terminate the motion. (Doc. #14).

Dated: March 6, 2017
       White Plains, NY

SO ORDERED:

*[signature]*

Vincent L. Briccetti
United States District Judge