**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ROBERT HAMLEN,

               Plaintiff,

v.

GATEWAY ENERGY SERVICES
CORPORATION,

               Defendant.

Civil Action No. 7:16-cv-03526-VB-JCM

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION**
**FOR LEAVE TO FILE AMENDED CLASS ACTION COMPLAINT**

{00286589 }

# Table of Contents

Table of Authorities…………………………………………………………………………ii

Introduction………………………………………………………………………………1

I.      Plaintiff Requests A *Nunc Pro Tunc* Three-
        Day Extension Of Time To File This Motion To Amend The Complaint………………..2

II.     Discovery Has Revealed Facts That Support Filing An Amended Complaint……………3

III.    Motions To Amend Under Rules 15 And 21 Are Freely Granted……..………………….5

IV.     The Proposed Amendments Satisfy Rule 15…………………………………………...7

        A.      The Proposed Amendments Are Not Futile………………………………..……..7

                1.      Amending The New Jersey
                        Consumer Fraud Act Claim Is Not Futile……………….........................7

                2.      Amending The Breach Of Contract Claim Is Not Futile……………….....12

        B.      Plaintiff's Motion To Amend Is Not Made In Bad Faith……………..………….14

        C.      Plaintiff's Motion To Amend Was Not Unduly Delayed………..……………...15

        D.      Defendant Will Not Suffer Undue
                Prejudice As A Result Of Plaintiff's Amendment…………………….……...…16

V.      The Proposed Amendments Satisfy
        Rule 20's Permissive Joinder Standard……………………………………………..17

        A.      Direct Energy Is Vicariously Liable For
                Any Claims Against Gateway Because The Latter
                Is The Alter Ego And Mere Instrumentality Of The Former…………...............18

        B.      Plaintiff Has Class Standing To
                Represent All Direct Energy And
                Gateway Natural Gas Customers In New Jersey…...............................................20

Conclusion…………………………………………………………………………….23

## Table of Authorities

**Cases**

*Aliments Krispy Kernels, Inc. v. Nichols Farms,*
851 F.3d 283 (3d Cir. 2017) ................................................................................. 18

*Am. Med. Ass'n v. United Healthcare Corp.,*
No. 00-2800, 2006 WL 3833440 (S.D.N.Y. Dec. 29, 2006) .................................. 15

*Blaskiewicz v. County of Suffolk,*
29 F. Supp. 2d 134 (E.D.N.Y. 1998) ....................................................................... 7

*Blesedell v. Mobil Oil Co.,*
708 F. Supp. 1408 (S.D.N.Y. 1989) ...................................................................... 17

*Block v. First Blood Assocs.,*
988 F.2d. 344 (2d Cir. 1993) ...................................................................... 6, 15, 16

*Celle v. Filipino Reporter Enterprises Inc.,*
209 F.3d 163 (2d Cir. 2000) ................................................................................. 18

*Chattin v. Cape May Greene, Inc.,*
124 N.J. 520, 591 A.2d 943 (1991) ...................................................................... 10

*Chen v. Hiko Energy, LLC,*
No. 12-1771, 2014 WL 7389011 (S.D.N.Y. Dec. 29, 2014) ........................... 13, 14

*Claridge v. N. Am. Power & Gas, LLC*, No.,
No. 15-1261, 2015 WL 5155934 (S.D.N.Y. Sept. 2, 2015).................................... 14

*Clarke v. Fonix Corp.,*
No. 98-6116, 1999 WL 105031 (S.D.N.Y. Mar. 1, 1999) ....................................... 6

*Conley v. Gibson,*
355 U.S. 41 (1957) .................................................................................................. 5

*Cox v. Sears Roebuck & Co.,*
647 A.2d 454 (N.J. 1994) ........................................................................................ 8

*Cresswell v. Sullivan & Cromwell,*
922 F.2d 60 (2d Cir. 1990) .................................................................................... 15

*Edwards v. N. Am. Power & Gas, LLC,*
120 F. Supp. 3d 132 (D. Conn. 2015) ................................................................... 14

*Fariello v. Campbell,*
  860 F. Supp. 54 (E.D.N.Y. 1994)................................................................... 16

*Fastiggi v. Waterview Hills Nursing Ctr., Inc.,*
  6 F. Supp. 2d 242 (S.D.N.Y. 1998)............................................................... 14

*Fernandez v. UBS AG,*
  222 F. Supp. 3d 358 (S.D.N.Y. 2016)........................................................... 23

*Fletcher v. Atex, Inc.,*
  68 F.3d 1451 (2d Cir. 1995).......................................................................... 19

*Foman v. Davis,*
  371 U.S. 178 (1962).............................................................................. 5, 6, 7

*Garcia v. Pancho Villa's of Huntington Village, Inc.,*
  68 F.R.D. 160 (E.D.N.Y. 2010) ...................................................................... 7

*Golden Trade, S.r.L. v. Jordache,*
  143 F.R.D. 504 (S.D.N.Y. 1992) .................................................................... 7

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Services, Inc.,*
  386 F.Supp.2d 461 (S.D.N .Y. 2005)............................................................ 20

*Kalb, Voorhis & Co. v. Am. Fin. Corp.,*
  8 F.3d 130 (2d Cir. 1993).............................................................................. 19

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
  313 U.S. 487 (1941)...................................................................................... 18

*Kroshnyi v. U.S. Pack Courier Servs., Inc.,*
  771 F.3d 93 (2d Cir. 2014)............................................................................. 5

*Leon v. Rite Aid Corp.,*
  774 A.2d 674 (N.J. Super. Ct. App. Div. 2001) ............................................. 9

*Levin v. Lewis,*
  179 N.J. Super. 193, 431 A.2d 157 (App. Div. 1981).................................... 11

*Liegey v. Ellen Figg, Inc.,*
  No. 02-1492, 2003 WL 21361724 (S.D.N.Y. June 11, 2003)........................ 18

*Mirkin v. Viridian Energy, Inc.,*
  No. 15-1057, 2016 WL 3661106 (D. Conn. July 5, 2016)........................ 13, 14

*Monahan v. New York City Dept. of Corr.,*
  214 F.3d 275 (2d Cir. 2000)........................................................................................ 5

*Morris v. N.Y. State Dep't of Taxation and Fin.,*
  623 N.E.2d 1157 (N.Y. 1993) .................................................................................... 18

*Murphy v. Implicito,*
  392 N.J. Super. 245, 920 A.2d 678 (App. Div. 2007)............................................... 12

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,*
  693 F.3d 145 (2d Cir. 2012) ........................................................................ 21, 22, 23

*New York Career Guidance Services, Inc. v. Wells Fargo Fin. Leasing, Inc.,*
  No. 1705-03, 2005 WL 1252315 (N.J. Super. Ct. Law Div. May 2, 2005)................ 8

*New York State Elec. & Gas Corp. v. FirstEnergy Corp.,*
  766 F.3d 212 (2d Cir. 2014) ................................................................................ 18, 19

*Oladapo v. Smart One Energy, LLC,*
  No. 14-7117, 2016 WL 344976 (S.D.N.Y. Jan. 27, 2016)....................................... 14

*Onyx Acceptance Corp. v. Trump Hotel & Casino Resorts, Inc.,* No. A-,
  No. A-5207-05T3, 2008 WL 649024 (N.J. Super. Ct. App. Div. Mar. 12, 2008) .... 10

*Pasternack v. Lab. Corp. of Am.,*
  892 F. Supp. 2d 540 (S.D.N.Y. 2012)....................................................................... 16

*Rachman Bag Co. v. Liberty Mut. Ins. Co.,*
  46 F.3d 230 (2d Cir. 1995).......................................................................................... 6

*Red Roof Franchising, LLC v. Patel,*
  877 F. Supp. 2d 124 (D.N.J. 2012) .......................................................................... 12

*Richards v. Avanti Powerboats, Inc.,*
  No. A-2094-05T1, 2006 WL 3511428 (N.J. Super. Ct. App. Div. Dec. 7, 2006) .... 11

*Ruotolo v. City of New York,*
  514 F.3d 184 (2d Cir. 2008)...................................................................................... 16

*Ryder Energy Distrib. Corp. v. Merrill Lynch Commod., Inc.,*
  748 F.2d 774 (2d Cir.1984).......................................................................................... 7

*S.E.C. v. DCI Telecomm., Inc.,*
  207 F.R.D. 32 (S.D.N.Y. 2002).................................................................................. 14

*Soler v. G&U, Inc.,*
    86 F.R.D. 524 (S.D.N.Y. 1980) ............................................................................................ 18

*Soroof Trading Dev. Co. v. GE Microgen, Inc.,*
    No. 10-1391, 2012 WL 1681815 (S.D.N.Y. May 11, 2012) ..................................................... 6

*Sorrell v. Inc. Vill. of Lynbrook,*
    No. 10-49, 2012 WL 1999642 (E.D.N.Y. June 4, 2012) ......................................................... 6

*State Teachers Ret. Bd. v. Fluor Corp.,*
    654 F.2d 843 (2d Cir. 1981) ............................................................................................ 16, 17

*Sullivan v. Barclays PLC*, No. 13-CV-2811,
    No. 13-2811, 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017) ..................................................... 22

*Sullivan v. West New York Residential, Inc.,*
    No. 01-7847, 2003 WL 21056888 (E.D.N.Y. Mar. 5, 2003) ..................................................... 7

*Szczubelek v. Cendant Mortg. Corp.,*
    215 F.R.D. 107 (D.N.J. 2002) ............................................................................................... 9

*Telesco v. Neuman,*
    No. 14-3480-VB, 2015 WL 5474230 (S.D.N.Y. Sept. 8, 2015) ............................................... 6

*Uni-World Capital, L.P. v. Preferred Fragrance, Inc.,*
    No. 13-7204, 2014 WL 3610906 n.9 (S.D.N.Y. July 21, 2014) .............................................. 15

*United Mine Workers of Am. v. Gibbs,*
    383 U.S. 715 (1966) ............................................................................................................. 6

*United States v. Baker,*
    No. 06-779 VB, 2011 WL 5121099 (S.D.N.Y. Aug. 23, 2011) ................................................ 2

*Viking Yacht Co. v. Composites One LLC,*
    No. 05-538, 2007 WL 2746713 (D.N.J. Sept. 18, 2007) ....................................................... 10

*Walsh v. Int'l Bhd. of Elec. Workers (I.B.E.W.) Local 503,*
    No. 14-1677 VB, 2015 WL 5474231 (S.D.N.Y. Aug. 12, 2015) ........................................... 2, 3

*Weber v. PACT XPP Techs., AG,*
    811 F.3d 758 (5th Cir. 2016) .............................................................................................. 19

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.,*
    933 F.2d 131 (2d Cir. 1991) ........................................................................................... 18, 19

**Rules**

Fed. R. Civ. P. 15 ................................................................................................... 1, 5, 6, 18

Fed. R. Civ. P. 20 ....................................................................................................... 17, 18

Fed. R. Civ. P. 21 ........................................................................................................... 1, 6

## **INTRODUCTION**

Plaintiff Robert Hamlen, by his attorneys, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, hereby respectfully submits this Memorandum of Law in support of his Motion For Leave to Amend the Complaint and to join Direct Energy Services, LLC ("Direct Energy") as a Defendant pursuant to Rules 15(a)(2), 20(a), and 21 of the Federal Rules of Civil Procedure.  A copy of the proposed Amended Class Action Complaint ("Am. Compl.") is attached as Exhibit 1, and a red-line version showing the proposed changes is attached for the convenience of the Court as Exhibit 2.

Plaintiff requests permission to amend the complaint in two ways.  First, Plaintiff seeks to re-plead violations of the New Jersey Consumer Fraud Act ("NJCFA") and breach of contract. Plaintiff seeks to do so based upon evidence uncovered in discovery which he believes will remedy the shortfalls in his allegations identified by the Court.

Second, Plaintiff seeks to name Direct Energy as a defendant, both because it is vicariously liable for any claims against Gateway Energy Services, Corporation ("Gateway") and because Mr. Hamlen has class standing to represent the claims of Direct Energy New Jersey natural gas customers as well as Gateway customers (because Gateway is merely a brand of Direct Energy and is a separate entity in name only).  Discovery produced to date shows not only that Gateway is nothing more than a mere instrumentality of Direct Energy, but also that Direct Energy engaged in the same unlawful conduct as Gateway, ████████████████████████
████████████████████████████████████████████████
██████████████████████

The proposed amendment is the first amendment to the Complaint sought by Plaintiff, and only became necessary after certain critical evidence was revealed in discovery.  The

proposed amendment will maximize judicial efficiency and permit all related matters to be fully determined on the merits.  Therefore, Plaintiff respectfully requests that the Court grant his Motion for Leave to File an Amended Class Action Complaint.

**I.      Plaintiff Requests A *Nunc Pro Tunc*
Three-Day Extension Of Time To File This Motion To Amend The Complaint.**

The deadline for Plaintiff to file a motion to amend the complaint or to add parties was August 11, 2017.  ECF No. 36, ¶ 3.  Plaintiff's counsel failed to meet that deadline owing to a calendaring error.  Instead of identifying the August 11, 2017 deadline in the firm calendar as the last day to file a motion to amend the complaint and add parties, counsel inadvertently calendared the event as simply the last day to file an amended complaint.  Accordingly, Plaintiff filed an amended complaint on August 11, 2017.  When alerted to the error by the Clerk, Plaintiff's counsel immediately prepared the instant motion, and Plaintiff now humbly asks this Court's indulgence by granting a three-day extension *nunc pro tunc*.  Allowing this modest, albeit belated, extension is appropriate, particularly as it will not prejudice Defendants.  *See United States v. Baker*, No. 06-779 VB, 2011 WL 5121099, at *3 (S.D.N.Y. Aug. 23, 2011) ("Accordingly, the Court finds that defendant's delay in filing his notice of appeal was due to excusable neglect . . . the April 29, 2010 notice of appeal will become effective *nunc pro tunc*  . . ."); *Walsh v. Int'l Bhd. of Elec. Workers (I.B.E.W.) Local 503*, No. 14-1677 VB, 2015 WL 5474231, at *1 (S.D.N.Y. Aug. 12, 2015) ("On November 21, 2014, plaintiffs filed an amended complaint, and on November 24, 2014, the Court granted plaintiffs' request to file an amended complaint *nunc pro tunc*.").

The undersigned takes full responsibility for failing to meet this Court's deadline, and Plaintiff's counsel apologizes to the Court and the Clerk for any inconvenience.

## II.   <u>Discovery Has Revealed Facts That Support Filing An Amended Complaint.</u>

Mr. Hamlen filed his original Complaint in this action on behalf of a putative class of New Jersey natural gas customers on May 11, 2016.  ECF No. 1.  In his Complaint, Mr. Hamlen alleged that Defendant Gateway, *inter alia*, misleadingly stated that it would charge Mr. Hamlen and class members a variable rate "based on market conditions" for its natural gas services, when in fact it engaged in deceptive marketing and pricing practices to charge thousands of its customers exorbitant rates for gas.  *See id.*  Accordingly, Mr. Hamlen alleged violations of the NJCFA, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.  On July 26, 2016, Defendant moved to dismiss Mr. Hamlen's Complaint in its entirety.  ECF No. 14.  On March 6, 2017, this Court issued an Opinion and Order granting dismissal of Plaintiff's claims for violation of the NJCFA, breach of contract, and unjust enrichment, and denying dismissal of Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.  ECF No. 28 ("Order").  In its Order, the Court explained that it dismissed Mr. Hamlen's NJCFA and breach of contract claims because Mr. Hamlen did not sufficiently allege substantial aggravating circumstances needed to state a valid NJCFA claim, and because the Complaint did not adequately allege that Defendant was acting beyond its allotted discretion to set rates based on market conditions pursuant to the contract.  *Id.* at 5-7.

Following the Court's decision on Defendant's dispositive motion, Plaintiff served his initial discovery requests upon Gateway on March 17, 2017, and the parties have been engaging in discovery since.  While much remains to be discovered before the April 13, 2018 deadline for the close of discovery (ECF No. 36, ¶ 10), ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

{00286589 }

3

███████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████ Thus, based on this new evidence, Plaintiff can plausibly allege claims under the NJCFA and for breach of contract.

Discovery has also revealed that Gateway is a corporate entity in name only.  In 2011, Direct Energy purchased Gateway.  Presently, Gateway has no officers, directors, or even employees; it has no corporate books or records, or even assets; and ███████████████ █████████████████████████████████████████ In other words, Gateway is a mere instrumentality of Direct Energy, ██████████████████████████████████ ████████████████ Thus, Direct Energy is vicariously liable for any claims against Gateway.

Discovery has also revealed that the only difference between Direct Energy and Gateway natural gas sales in New Jersey is in name only.  Quite literally, as Mr. Hay conceded, the

difference between Gateway and Direct Energy is only a matter of branding.  Am. Compl. ¶ 20.

Gateway and Direct Energy use the same Terms & Conditions; Direct Energy buys wholesale

gas for Gateway customers at the same time and using the same methods as it does for Direct

Energy customers; and ██████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

      Because Gateway customer claims are the same as Direct Energy customer claims, they

are properly treated as one class, and Mr. Hamlen has class standing to represent both Gateway

and Direct Energy customers.

      Therefore, Plaintiff should be allowed to amend the complaint to name Direct Energy as

a defendant.

## III.  Motions To Amend Under Rules 15 And 21 Are Freely Granted.

      Plaintiff's motion should be granted because Rule 15 of the Federal Rules of Civil

Procedure embodies a liberal amendment policy under which courts have broad discretion to

permit amendments.  Federal Rule of Civil Procedure 15 permits a party to amend its pleading

with "the court's leave," which should be "freely give[n] . . . when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  Rule 15 reflects two "important principles" of the Federal Rules: (1) pleadings

"serve the limited role of providing the opposing party with notice of the claim or defense to be

litigated"; and (2) "mere technicalities should not prevent cases from being decided on the

merits."  *Monahan v. New York City Dept. of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000) (citing

*Conley v. Gibson*, 355 U.S. 41, 47-48 (1957); *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Thus,

in the absence of a good reason -- including futility, bad faith, undue delay, or undue prejudice --

a motion to amend should be granted.  *See, e.g., Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771

F.3d 93, 109 (2d Cir. 2014) (quoting *Foman*, 371 U.S. at 182); *Telesco v. Neuman*, No. 14-3480-VB, 2015 WL 5474230, at *2 (S.D.N.Y. Sept. 8, 2015) (granting motion to amend).

"Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."  *Block v. First Blood Assocs.*, 988 F.2d. 344, 350 (2d Cir. 1993) (internal quotation marks omitted); *accord Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995) ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.' ") (quoting *Foman*, 371 U.S. at 182). Accordingly, "[i]f no prejudice is found, then leave normally will be granted."  6 Charles Alan Wright & Arthur R. Miller, Fed. Practice and Procedure § 1484 (3d ed.).

Plaintiff's motion should also be granted under Rule 21, which governs the addition of new parties.  It provides that "the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  The same liberal standard favoring amendment under Rule 15 applies to the joinder of parties.  *See Sorrell v. Inc. Vill. of Lynbrook*, No. 10-49, 2012 WL 1999642, at *3 (E.D.N.Y. June 4, 2012) ("'Although Rule 21, not Rule 15(a) normally governs the addition of new parties to an action, the same standard of liberality applies under either Rule.'") (quoting *Clarke v. Fonix Corp.*, No. 98-6116, 1999 WL 105031, at *5 (S.D.N.Y. Mar. 1, 1999), aff'd, 199 F.3d 1321 (2d Cir. 1999)); *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, No. 10-1391, 2012 WL 1681815, at *3 (S.D.N.Y. May 11, 2012) ("the showing necessary under Rule 21 is the same as that required under Rule 15(a)(2)") (internal quotation marks omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

IV.     **The Proposed Amendments Satisfy Rule 15.**

The Court should grant Plaintiff leave to file the Amended Complaint because Defendant cannot show that the amendments are futile, the product of "undue delay, bad faith or dilatory motive," or that they will cause Defendant "undue prejudice." *Foman*, 371 U.S. at 182.

A.     **The Proposed Amendments Are Not Futile.**

In determining whether amendment is futile, "[t]he issue is not whether plaintiff will ultimately prevail but whether he is entitled to offer evidence to support the claims asserted." *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 68 F.R.D. 160, 164 (E.D.N.Y. 2010); *Sullivan v. West New York Residential, Inc.*, No. 01-7847, 2003 WL 21056888, at * 2 (E.D.N.Y. Mar. 5, 2003) ("amendment is futile only if movants cannot demonstrate 'at least colorable grounds for relief.'" (quoting *Ryder Energy Distrib. Corp. v. Merrill Lynch Commod., Inc.*, 748 F.2d 774, 783 (2d Cir.1984)).  In making this determination, the court should not consider the merits of a claim or defense unless the amendment is "clearly frivolous or legally insufficient on its face." *Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998).  "If the [movant] has at least colorable grounds for relief, justice . . . require[s]' that the court grant leave to amend a complaint." *Blaskiewicz*, 29 F. Supp. 2d at 138 (quoting *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 504, 506 (S.D.N.Y. 1992)) (additional citation omitted) (alteration in original).  The party opposing amendment bears the burden of demonstrating that leave to amend would be prejudicial or futile. *Blaskiewicz*, 29 F. Supp. 2d at 137.

1.     **Amending The New Jersey Consumer Fraud Act Claim Is Not Futile.**

In dismissing Plaintiff's NJCFA claim, this Court found that the contract expressly authorized Defendant to set the variable rate using its discretion based on its evaluation of a number of factors.  Order at 4-5. ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

Gateway provided Plaintiff with its Terms & Conditions, which was not yet a binding contract during the 14-day recessionary period but was instead a solicitation describing the basis of the variable rate.  Ex. A to Am. Compl.  The Terms & Conditions affirmatively represent that "[t]he price for all electricity or natural gas sold under our Variable-Rate Plan is a rate set by us each month based on our evaluation of a number of factors that affect the total price of electricity or natural gas to a customer.  The following description is not exhaustive of all factors that may influence our pricing decision each month, **but it does describe the major components that influence our analysis** in a typical month."  (Emphasis added.)  ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████  "In an action under the NJCFA, the test is whether the conduct of a defendant has the capacity to mislead the average consumer."  *New York Career Guidance Services, Inc. v. Wells Fargo Fin. Leasing, Inc.*, No. 1705-03, 2005 WL 1252315, at *5 (N.J. Super. Ct. Law Div. May 2, 2005) (collecting cases); *Cox v. Sears Roebuck & Co.*, 647 A.2d

454, 462 (N.J. 1994) (unlawful conduct does not require a showing of knowledge and intent to deceive).[1]

In dismissing the original Complaint, the Court found that the contract expressly authorized Defendant to set its rate based on its own evaluation of a number of factors.  Order at 5.  But the contract also expressly limits that discretion to the use of the listed factors as the "major components."  A reasonable consumer faced with the Terms & Conditions that identify wholesale costs and competitor pricing as the major components that influence the variable rate would presume that, while the rate may increase or decrease, and might not be lower than the utility rate, it would nonetheless be competitive with other suppliers in the market and that the prices would in fact reflect Gateway's wholesale costs as well as market conditions.  Am. Compl. ¶ 27.  Indeed, other than potential price savings, there is nothing to differentiate Defendant from other ESCOs or local utilities, and the potential for price savings is the only reason any reasonable consumer would enter into a contract for natural gas supply with Defendant.  Am. Compl. ¶ 30.  No reasonable consumer who knows the truth, that what really drives Defendant's rates is that it charges as much as it can until customers quit, would choose Defendant as a natural gas supplier.  *Id*. ¶¶ 30-31.   This Court held that "plaintiff agreed to allow defendant discretion in setting the rate for natural gas without a promise of a lower rate than competitors' rates."  Order at 6.  ███████████████████████

---

[1] Whether a statement has the capacity to mislead consumers is a question of fact for the jury. *See Leon v. Rite Aid Corp.*, 774 A.2d 674, 678 (N.J. Super. Ct. App. Div. 2001) ("Indeed, a jury would appear especially well suited to determine the impact of an advertisement upon 'an average consumer.'"); *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 126 (D.N.J. 2002) ("Whether Defendants' actions or omissions constituted an unconscionable commercial practice because [Defendant's] disclosure has the capacity to mislead consumers . . . are clearly questions of fact for a jury to answer.").

████████████████████████████████████████

████████████████████████████████████████

This Court also held that Plaintiff failed to show substantial aggravating factors under the NJCFA. Order at 6. However, where, as here, a plaintiff alleges an affirmative misrepresentation that is deceptive, there is no need to plead substantial aggravating factors. *See Chattin v. Cape May Greene, Inc.*, 124 N.J. 520, 527, 591 A.2d 943, 947 (1991) ("Whether denominated an affirmative statement or an omission, the distinguishing characteristic of a misstatement not requiring proof of scienter under the Act is that its inherent falsity is so manifest that its thoroughly unredeemable nature is itself the 'substantial aggravating circumstance' that merits the Act's formidable penalties."); *Onyx Acceptance Corp. v. Trump Hotel & Casino Resorts, Inc.*, No. A-5207-05T3, 2008 WL 649024, at *12 (N.J. Super. Ct. App. Div. Mar. 12, 2008) ("It is the capacity to mislead that is the prime ingredient of all types of consumer fraud.") (citation omitted); *Viking Yacht Co. v. Composites One LLC*, No. 05-538, 2007 WL 2746713, at *4 (D.N.J. Sept. 18, 2007) ("The requirement that substantial aggravating circumstances be shown to convert a simple breach of warranty claim into one under the NJCFA, and the finding that no such factors exist, was limited to the breach of warranty claim under the NJCFA contained in Count XII. This requirement and finding does not extend to the claims of misrepresentation and unconscionable commercial practice in Count XI, because the claims in Count XI were not premised upon the alleged breach of warranty. Rather, Plaintiffs' claims in Count XI allege violations of the NJCFA due to the purported unconscionable commercial practice of inducing reliance on unreliable data, which, if proven, could constitute violation of the NJCFA without an additional showing of substantial aggravating factors.").

Even assuming *arguendo* that pleading substantial aggravating circumstances is necessary, Plaintiff's allegation that Defendants engage in bait and switch tactics ████

████████████████████████████████████████████████████████████████

████████████████ are sufficient to demonstrate substantial aggravating circumstances. *See Levin v. Lewis*, 179 N.J. Super. 193, 201, 431 A.2d 157, 162 (App. Div. 1981) ("There was adequate support in the record to uphold the violations of the Consumer Fraud Act.  Desert and Farrell both testified that they were originally given firm prices for the completion of work.  In Desert's case he was subsequently billed more than twice the original price and Lewis refused to set a price for the completion of work, and to date the car is incomplete.  Farrell was told the engine would cost $1,000 and later, when he received notice that the engine was finished, the bill would be twice the estimated price . . . Thus, there was adequate support for finding deceptive practices committed by appellant."); *Richards v. Avanti Powerboats, Inc.*, No. A-2094-05T1, 2006 WL 3511428, at *3 (N.J. Super. Ct. App. Div. Dec. 7, 2006) ("We are also satisfied that merely because defendant's failure to return plaintiff's entire refundable deposit constituted a breach of contract, plaintiff was not limited to contract damages, but was also entitled to assert a CFA claim.  To demonstrate the affirmative act of an unconscionable commercial practice, a plaintiff need not prove a defendant intended to deceive or commit an unlawful act.   Thus, even if Fridmann initially took plaintiff's $40,000 advance intending to pay for the engine for the new boat and return the funds when the boat was completed, his subsequent conduct in failing to timely order the 525-HP engine or perform the additional work on the new boat, and in refusing to return $27,000 of the refundable deposit even though he had not expended the funds for the specified purpose demonstrated a lack of good faith and fair dealing. Essentially, defendant used

plaintiff's deposit, advanced in good faith for the purchase of the engine package for the new boat, as an interest-free loan to the business.").

Consequently, Plaintiff should be allowed to amend the Complaint to re-allege a NJCFA claim.

### 2.    Amending The Breach Of Contract Claim Is Not Futile.

This Court dismissed Plaintiff's breach of contract claim because "Plaintiff provides only conclusory allegations that defendant failed to base its rates on its cost for natural gas or market conditions."  Order at 6. ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████

"To prove a claim for breach of contract, a plaintiff must demonstrate that a valid contract existed and that the defendant failed to perform under the contract causing injury."  *Red Roof Franchising, LLC v. Patel*, 877 F. Supp. 2d 124, 131 (D.N.J. 2012) (citing *Murphy v. Implicito*, 392 N.J. Super. 245, 920 A.2d 678, 689 (App. Div. 2007).  Plaintiff has plainly alleged that he entered into an agreement with Gateway for the purchase of natural gas (Am. Compl. ¶¶ 15-19, 48); that, in the agreement, Gateway represented that he would be charged a variable monthly rate  "based on market conditions," the major components of which were the wholesale cost of natural gas and prices charged by his local utility and Gateway's other competitors in the area (Am. Compl. ¶¶ 15-18, 49, and Ex. A); ████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

and that as a result of such breach, Plaintiff paid Gateway variable monthly rates that, after the sixth month of service, consistently and substantially exceeded the local utility rate and bore little or no relation to the wholesale cost of natural gas.  Am. Compl. ¶¶ 19-24, 50, 52.

When read in the light most favorable to Plaintiff, these representations lend themselves to the interpretation that Defendant's variable rate would be "based on market conditions," *i.e.*, reflective of the wholesale cost of purchasing natural gas and be competitive.  *See Chen v. Hiko Energy, LLC*, No. 12-1771, 14-2042, 2014 WL 7389011, at *6 (S.D.N.Y. Dec. 29, 2014) (finding plausible allegations of breach of contract to base variable rates on specified "market-related factors" where defendant's rate was higher and increased faster than that of the utility); *Mirkin v. Viridian Energy, Inc.*, No. 15-1057, 2016 WL 3661106, at *8-9 (D. Conn. July 5, 2016) (holding that Viridian's rates' failure to track contemporaneous wholesale market rates were an appropriate indicator of market conditions and adequately alleged breach of contract).

Here, the Amended Class Action Complaint alleges:

- "from June 2011 until January 2016, Gateway's rate was higher than NJNG's *every single month*.  In fact, there are numerous months where Gateway's rate was more than double NJNG's rate."  Compl. ¶ 29.

- "the wholesale price of natural gas dropped from $0.78 per therm to $0.58 from July 2011 to May 2012 (a 25% decline) yet Gateway's rate stayed virtually the same.  During this same period, NJNG's rate declined from $0.74 to $0.58, a reflection of both the fact that over time the rate NJNG charges is commensurate with market price changes and that Gateway does not charge a market rate but instead gouges consumers by charging outrageously high rates."  Compl. ¶ 32.

- "from July 2011 to February 2012, Gateway's rate actually increased from $0.79 per therm to $0.84, while wholesale rates actually declined by $0.10 per therm."  Compl. ¶ 32.

- "the wholesale rate fell by 9% from June 2013 to April 2014 (from $0.68 to $0.62) yet Gateway's rate rose during that period by 9% (from $0.86 to $0.95). As expected, NJNG's rate declined during this period." Compl. ¶ 33.

As in *Chen* and *Mirkin*, it is plausible, given the foregoing, that Defendant's variable rates were not "based on market conditions," *i.e.,* not reflective of the wholesale cost of natural gas and not competitive. *See Claridge v. N. Am. Power & Gas, LLC*, No. 15-1261, 2015 WL 5155934, at *6 (S.D.N.Y. Sept. 2, 2015) (defendant "breached its promise to set its monthly variable rates according to market rates"); *Oladapo v. Smart One Energy, LLC*, No. 14-7117, 2016 WL 344976, at *3-4 (S.D.N.Y. Jan. 27, 2016) ("Plaintiff's allegations that Smart One's prices bore an inverse relationship to Washington Gas' supply pricing are sufficient, at the pleading stage, to support an inference of breach of Smart One's contractual undertakings" "to set prices 'in response to changing gas market conditions,' . . .'"); *Mirkin*, 2016 WL 3661106, at *8 ("[W]here one party to a contract has acted intentionally to exercise its discretion beyond the limits established by the contract and in a manner that will frustrate the expectations of the other party to that contract, a breach of contract has occurred").[2]

**B.    Plaintiff's Motion To Amend Is Not Made In Bad Faith.**

The question of bad faith requires a court to focus on the plaintiff's motives for amending the complaint. Undue delay, standing alone, does not constitute bad faith. *See S.E.C. v. DCI Telecomm., Inc.*, 207 F.R.D. 32, 34 (S.D.N.Y. 2002) (no bad faith absent a "showing of malice"). A proposed amendment is not in bad faith when it "comes early in the litigation" while discovery is ongoing, "and relies on the same facts" set forth in the original complaint. *See Fastiggi v.*

---

[2] *See also Edwards v. N. Am. Power & Gas, LLC*, 120 F. Supp. 3d 132, 143 (D. Conn. 2015) ("While the text of the contract itself [providing that the 'variable rate may increase or decrease to reflect changes in the wholesale power market'] does not indicate that NAPG prices would definitively or precisely be linked with the wholesale market price, . . . it is plausible that a reasonable consumer would infer a direct link between the two.").

*Waterview Hills Nursing Ctr., Inc.*, 6 F. Supp. 2d 242, 243 (S.D.N.Y. 1998).  Moreover, a motion to "enlarge plaintiffs' claims . . . prompted by evidence first obtained during expedited discovery" is not suggestive of bad faith.  *See Uni-World Capital, L.P. v. Preferred Fragrance, Inc.*, No. 13-7204, 2014 WL 3610906, at *13 n.9 (S.D.N.Y. July 21, 2014); *accord Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993) (bad faith not evident where amendment was sought after party first became aware of unknown facts).

Here, Plaintiff moves for leave to amend in good faith based on additional investigation and analysis of the facts during the early discovery stages of this case.  The proposed Amended Class Action Complaint was precipitated by early document production and Cullen Hay's 30(b)(6) deposition testimony.  The proposed amendment relies on the same nucleus of facts set forth in the Complaint, and is supplemented by the new information that has since come to light.  Accordingly, Defendant cannot show any bad faith by Plaintiff in seeking to amend the Complaint at this time.

**C.**     **Plaintiff's Motion To Amend Was Not Unduly Delayed.**

A court has discretion to deny leave to amend where the motion is made after an "inordinate delay" without any "satisfactory explanation" offered for the delay.  *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990).

Here, the proposed amendments are based on information Plaintiff acquired only recently, and Plaintiff acted promptly in seeking to amend at the deadline provided by the Court. Moreover, the current procedural posture of this litigation is far from final resolution.  Under these circumstances, there will be no undue delay.  *Am. Med. Ass'n v. United Healthcare Corp*., No. 00-2800, 2006 WL 3833440, at *3-4 (S.D.N.Y. Dec. 29, 2006) (discovery of new facts was

satisfactory explanation for two-and-a-half year delay in filing proposed amendment, especially because case was "at an earlier procedural stage" and discovery was ongoing).

**D.      Defendant Will Not Suffer Undue Prejudice As A Result Of Plaintiff's Amendment.**

In determining what constitutes prejudice, courts "consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350.  Undue prejudice arises when an amendment is "made on the eve of trial" and "result[s] in new problems of proof." *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).  "'The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial.'" *Pasternack v. Lab. Corp. of Am.*, 892 F. Supp. 2d 540, 529 (S.D.N.Y. 2012) (quoting *Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994)).

This case is not on the eve of trial; a trial date has not even been set.  Only a single deposition has been taken, by Plaintiff, which was primarily directed at understanding Defendant's document and data systems and the basic procedure by which the variable rate is set. More importantly, as can be seen by a review of the Amended Class Action Complaint, the additional counts are based on the same nucleus of facts, and essentially the same conduct, namely charging a variable rate in contravention of the promises made in the Terms & Conditions.

Moreover, little additional discovery will be required owing to the amendments.  There is little if any difference in the discovery needed to prove that Direct Energy acted deceptively or unconscionably in setting the variable rate in contravention of the express terms of the Terms &

Conditions (for the NJCFA and contract claims) and in proving that Direct Energy set the variable rate in bad faith (for the duty of good faith and fair dealing claims).  Nor does the addition of Direct Energy require much more than supplementing Gateway's prior production with respect to the form contracts and marketing materials it uses in New Jersey. ███████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

Given these circumstances, there should be no delay in the resolution of the case and Defendants will not suffer undue prejudice should the Court grant Plaintiff leave to amend the Complaint.  *See State Teachers*, 654 F.2d at 856 (reversing denial of leave to amend sought promptly after learning new facts, where "no trial date had been set by the court and no motion for summary judgment had yet been filed by the defendants" and where "the amendment will not involve a great deal of additional discovery").

## V.     The Proposed Amendments Satisfy Rule 20's Permissive Joinder Standard.

Plaintiff easily meet the lenient joinder standard, which applies to motions to add parties under Rule 20(a).  Rule 20(a)(2) provides that  "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  The phrase "same transaction or occurrence" includes all "logically related claims by or against different parties to be tried in a single proceeding."  *Blesedell v. Mobil Oil Co.*, 708 F. Supp. 1408, 1421 (S.D.N.Y. 1989) (internal

quotation marks omitted).  "Like Rule 15, the requirements of Rule 20(a) should be interpreted

liberally in order to enable the court to promote judicial economy by permitting all reasonably

related claims for relief by or against different parties to be tried in a single proceeding."  *Liegey*

*v. Ellen Figg, Inc.*, No. 02-1492, 2003 WL 21361724, at \*3 (S.D.N.Y. June 11, 2003) (internal

quotation marks omitted).  Where, as here, the claims sought to be added "stem from the same

allegedly unlawful practice originally challenged in th[e] action . . . [t]he interests of justice

would best be served by litigating and resolving all the rights and liabilities existing between the

parties in one lawsuit."  *Soler v. G&U, Inc.*, 86 F.R.D. 524, 527 (S.D.N.Y. 1980).

Joinder of Direct Energy is warranted for two reasons: because Direct Energy is

vicariously liable for any claims against Gateway, and because Mr. Hamlen has class standing to

represent Direct Energy natural gas customers in New Jersey.

**A.      Direct Energy Is Vicariously Liable For Any Claims Against Gateway
         Because The Latter Is The Alter Ego And Mere Instrumentality Of The Former.**

Under New York law, "a parent can be held liable for the actions of a subsidiary where a

plaintiff shows: (1) the parent corporation dominates the subsidiary in such a way as to make it a

"mere instrumentality" of the parent; (2) the parent company exploits its control to "commit

fraud or other wrong"; and (3) the plaintiff suffers an unjust loss or injury as a result of the fraud

or wrong."  *New York State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224–25 (2d

Cir. 2014) (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d

131, 138 (2d Cir. 1991)); *accord Morris v. N.Y. State Dep't of Taxation and Fin.*, 623 N.E.2d

1157, 1160–61 (N.Y. 1993) (same).[3]

---

[3] "Federal courts exercising diversity jurisdiction apply the choice-of-law rules of the forum
state, here New York, to decide which state's substantive law governs."  *Celle v. Filipino
Reporter Enterprises Inc.*, 209 F.3d 163, 175 (2d Cir. 2000) (citing *Klaxon Co. v. Stentor Elec.
Mfg. Co.*, 313 U.S. 487 (1941)); *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283,

In considering the first prong, courts assess the following factors to determine the degree of domination by the parent:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like; (2) inadequate capitalization; (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the amount of business discretion displayed by the allegedly dominated corporation at arms length; (8) whether the corporations are treated as independent profit centers; (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group; and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*FirstEnergy Corp.*, 766 F.3d at 224–25 (2d Cir. 2014) (finding allegations sufficient to justify piercing the corporate veil and holding that "while . . . not every factor is present in this case, that is not a requirement") (quoting *Wm. Passalacqua Builders*, 933 F.2d at 139 (recognizing the "infinite variety of situations that might warrant disregarding the corporate form.")).

Here, Plaintiff alleges that Gateway maintains no corporate formalities, such as keeping any corporate records, or electing officers or directors (Am. Compl. ¶¶ 18.a, d); has no capitalization at all (Am. Compl. ¶ 18.c); has no funds that are put in or taken out of the corporation (Am. Compl. ¶ 18.b); to the extent Gateway can be said to have ownership, officers, directors, and personnel, they completely overlap with those of its parent Direct Energy (Am. Compl. ¶ 18.d); it shares the same corporate offices with Direct Energy and all contracts with

---

289 (3d Cir. 2017) ("To determine the applicable state law, we use the forum state's choice-of-law rule."); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016) (same). "Under New York's choice of law principles, the law of the state of incorporation determines when the corporate form will be disregarded." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). This is so because "the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away." *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993). Gateway is incorporated in New York. Am. Compl. ¶ 6.

Gateway are referred to Direct Energy (Am. Compl. ¶¶ 18.e, 19); ███████████████

████████████████████████████████████ Gateway and Direct Energy are not treated as

separate profit centers, and in fact Gateway has no separate books and records (Am. Compl. ¶¶

18.a, b, 22); all payments and guarantees of debts are handled by Direct Energy (Am. Compl. ¶¶

18.g, 21.d); and Gateway has no property of its own.  Am. Compl. ¶ 19.e.

To satisfy the second and third prongs, a plaintiff must demonstrate "1) the existence of a

wrongful or unjust act toward that party, and 2) that the act caused that party's harm." *JSC

Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Services, Inc.,* 386 F.Supp.2d 461,

465 (S.D.N .Y. 2005)████████████████████████████████

███████████████████████████████████████████████████

██████████████████ And Plaintiff more than adequately alleges that these rates caused him

harm.  *See, e.g.*, Am. Compl. ¶¶ 46-75.

This Court will likely see few instances where piercing the veiling is as justifiable as it is

here in light of the circumstances involving Gateway and Direct Energy.

**B**.      **Plaintiff Has Class Standing To
         Represent All Direct Energy And Gateway Natural Gas Customers In New Jersey.**

Mr. Hamlen has class standing to represent both Gateway and Direct Energy customers in

the same class, as Direct Energy customers are similarly situated compared to Gateway

customers and their claims are essentially the same as Mr. Hamlen's claims.  █████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

Indeed, Gateway and Direct Energy are only different brand names for the same exact product.

Am. Compl. ¶¶ 20.

The Second Circuit clarified in *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) that, even when a named plaintiff might not have the exact same transactional nexus with the defendants as every member of the class, so long as the claims are essentially the same, the plaintiff has sufficient incentive to prosecute the claims of the entire class. In *NECA*, the Second Circuit clarified that the question of whether a plaintiff has standing in its own right is different from whether that plaintiff has standing to represent everyone in the proposed class:

> NECA also has statutory standing in its own right, having purchased the 2007–5 and 2007–10 Certificates pursuant to registration statements, parts of which are alleged to have contained materially misleading statements . . . But whether NECA has "class standing-- that is, standing to assert claims *on behalf of* purchasers of Certificates from other Offerings, or from different tranches of the same Offering -- does not turn on whether NECA would have statutory or Article III standing to seek recovery for misleading statements in those Certificates' Offering Documents. NECA clearly lacks standing to assert such claims on its behalf because it did not purchase those Certificates . . . the class standing analysis is different . . .

*Id.* at 158. The test is whether the named plaintiff has the same sets of concerns as all members of the putative class because they suffered the same injury, and the Second Circuit concluded that when the misrepresentations at issue are the same, the resulting injury is typically the same, rendering class certification appropriate:

> [I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants . . . in the context of claims alleging injury based on misrepresentations, the misconduct alleged will almost always be the same: the making of a false or misleading statement.

*Id.* at 162 (citations and alterations omitted).

Thus, where, as here, the same defendants have engaged in the same illegal conduct based on the same misrepresentations and where the resulting contracts are the same, a plaintiff

has plausibly alleged class standing on behalf of a putative class. As Judge Castel recently

explained, in finding that a named plaintiff had Article III standing to pursue claims of a class

comprised of investors in different categories of derivatives, "at the pleading stage, a plaintiff has

standing to assert claims on behalf of class members if it plausibly alleges that it 'has suffered

some actual injury as a result of the putatively illegal conduct of the defendant,' and that this

conduct implicates the same set of concerns as the conduct alleged to have caused injury to other

members of the putative class by the same defendants.'" *Sullivan v. Barclays PLC*, No. 13-2811,

2017 WL 685570, at *7 (S.D.N.Y. Feb. 21, 2017) (quoting *NECA*, 693 F.3d at 162). Because

the harm of all class members flowed from the same misconduct and injury could be based on

common proof, Judge Castel concluded that, at the pleasing stage, the plaintiffs sufficiently

alleged class standing:

> [Forward rate Agreements] are a different category of derivative than those
> transacted in by plaintiffs, but any harm suffered by a party to an FRA as a result
> of the Euribor's manipulation would have been caused by the identical misconduct
> of the identical parties. Liability would turn on the same proof as to the allegedly
> false Euribor submissions. There would be no need to separately assess separate
> acts of manipulation by additional parties . . . the evidence in support of plaintiffs'
> own claims would be in unity with any claim brought on behalf of parties to FRA
> transactions . . . Because any injury suffered by those who transacted in FRAs
> "flowed from" the same conduct and the same parties who allegedly caused injury
> to plaintiffs, the Court concludes that plaintiffs have alleged class standing on
> behalf of those who transacted in FRAs.

*Id.* at *8.

████████████████████████████████████████████████

████████████████████████████████████████████

████████████Whether Defendants acted deceptively, or violated

the Terms & Conditions, or did not set rates in good faith and in compliance with their duty of

fair dealing will be determined by a common set of proof, namely Defendants' rate and cost data

and common evidence concerning market and competitor rates.  Thus, Mr. Hamlen plausibly alleges that he has standing to represent the entire putative class of Gateway and Direct Energy customers.  *See Fernandez v. UBS AG*, 222 F. Supp. 3d 358, 373 (S.D.N.Y. 2016) (denying motion to dismiss where "[t]he underlying allegations regarding defendants' misconduct -- as alleged -- applies to all twenty-three Funds and the Funds are all alleged to be structured the same way and to hold the same types of assets by the same defendants.  Plaintiffs allege that the client agreements at issue are all substantially similar and that their relationships with defendants are all substantially similar, such that fiduciary duties arose out of those relationships. *Cf. NECA–IBEW*, 693 F.3d at 162–63. Because of these similarities, if defendants' systematic conduct is tortious with respect to one fund, it is also tortious with respect to another fund, and does not depend on the individualized circumstances of each Fund.").

Therefore, it is proper to add Direct Energy as a defendant.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court grant his motion for leave to file amended pleadings and permit him to file the proposed Amended Class Action Complaint.

Dated:       August 16, 2017

             White Plains, New York

                                  **FINKELSTEIN, BLANKINSHIP,**
                                  **FREI-PEARSON & GARBER, LLP**


                                  */s/ D. Greg Blankinship*
                                  D. Greg Blankinship
                                  Todd G. Garber
                                  Antonino B. Roman
                                  Chantal Khalil
                                  445 Hamilton Avenue
                                  White Plains, New York 10601
                                  Tel: (914) 298-3281
                                  Fax: (914) 824-1561
                                  gblankinship@fbfglaw.com
                                  tgarber@fbfglaw.com
                                  aroman@fbfglaw.com
                                  ckhalil@fbfglaw.com

                                  *Attorneys for Plaintiff and the Putative Class*