# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT HAMLEN, <br><br>                Plaintiff, <br><br> v. <br><br> GATEWAY ENERGY SERVICES CORPORATION, <br><br>                Defendant. | Civil Action <br><br><br> Case No: 7:16-cv-03526-VB-JCM |
| ANTHONY WAGAR, <br><br>                Plaintiff, <br><br> v. <br><br> GATEWAY ENERGY SERVICES CORPORATION, <br><br>                Defendant. | Case No: 7:18-cv-10244 |

## MEMORANDUM OF LAW IN SUPPORT OF UNCONTESTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

{00292821  }

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Introduction ............................................................................................................. 1

Background .............................................................................................................. 3

I.     The Litigation .................................................................................................. 3

II.    The Settlement Terms ..................................................................................... 6

Argument ................................................................................................................. 8

I.     Standard For Approval Of A Class Action Settlement ..................................... 8

      A.    FBFG And Plaintiffs Have Adequately Represented The Class. ......................... 10

      B.    The Settlement Agreement Was Negotiated At Arm's Length. ........................... 11

      C.    The Litigation Is Complex And Will Be Expensive And Lengthy. ...................... 12

      D.    Plaintiffs Face Substantial Hurdles In Establishing Liability. .............................. 13

      E.    Plaintiffs Face Substantial Hurdles In Proving Damages. .................................... 13

      F.    Maintaining The Class Action Through Trial May Be Challenging. ................... 14

      G.    Gateway May Not Be Able To Withstand A Substantially Greater Judgment..... 14

      H.    The Settlement Amounts Are Reasonable In Light Of The Best
           Possible Recovery And In Light Of All The Attendant Risks Of Litigation............ 15

      I.    The Settlement Agreement Facilitates Claims Submission And
           Processing, And The Distribution Of Benefits To The Settlement Class. ................ 16

      J.    Class Counsel Fees Were Separately Negotiated And
           Would Not Diminish The Benefits To The Settlement Class. ................................. 17

      K.    There Are No Agreements To Identify Pursuant To Rule 23(E)(3). ....................... 18

      L.    The Settlement Agreement Treats Class
           Members Equitably Relative To Each Other........................................................... 18

      M.    The Reaction Of The Class Was Overwhelmingly Positive. ................................. 18

      N.    The Current Stage Of The Instant Litigation And The
           Extensive Discovery That Has Occurred Favor Final Approval. ........................... 21

III.     Notice Was Provided In The Best Practicable Manner. ..................................................... 21

IV.     The Court Should Certify The Class. ................................................................................. 23

Conclusion .................................................................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
  271 F. App'x 41 (2d Cir. 2008) ............................................................ 22

*Charron v. Pinnacle Grp. N.Y. LLC*,
  874 F. Supp. 2d 179 (S.D.N.Y. 2012) ................................................. 19

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ........................................................... 9, 15

*County of Suffolk v. Long Island Lighting Co.*,
  907 F.2d 1295 (2d Cir. 1990) .............................................................. 19

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) .................................................................... 9

*Ferrington v. McAfee, Inc.*,
  No. 10-1455, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012) .................... 19

*Hamilton v. SunTrust Mortg. Inc.*,
  No. 13-60749, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) .................. 20

*In re "Agent Orange" Prod. L*iab. Litig.,
  611 F. Supp. 1396 (E.D.N.Y. 1985) ................................................... 16

*In re American Bank Note Holographics, Inc. Sec. Litig.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................. 18

*In re Austrian and German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................... 9, 12, 15, 21

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05-10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................. 11

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................... 19

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
  233 F.R.D. 306 (E.D.N.Y. 2006) ........................................................... 8

*In re Michael Milken and Associates Sec. Lit.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) ........................................................... 15

*In re Nissan Radiator/Transmission Cooler Litig.*,
  No. 10-7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) ....... 9, 19, 21, 22

*In re PaineWebber Ltd. Partnerships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ......................................................... 13

July 12, 2019, 2019, 17,
444 or 14 ............................................................................................................................ 19

*Martens v. Smith Barney, Inc.*,
181 F.R.D. 243 (S.D.N.Y. 1998) ...................................................................................... 21

*Perez v. Asurion Corp.*,
501 F. Supp. 2d 1360 (S.D. Fla. 2007) ............................................................................ 20

*Plummer v. Chemical Bank*,
668 F.2d 654 (2d Cir. 1982) ............................................................................................. 21

*Poertner v. Gillette Co.*,
618 Fed. Appx. 624 (11th Cir. 2015) ............................................................................... 20

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
237 F.R.D. 26 (E.D.N.Y. 2006) ....................................................................................... 12

*Richards v. Direct Energy Servs., LLC*,
915 F.3d 88 (2d Cir. 2019) ............................................................................................... 13

*Saldana v. Middletown Car-G-Cam Uni Corp.*,
No. 15-3651, 2015 WL 12591678 (S.D.N.Y. Sept. 23, 2015) ........................................ 12

*Stinson v. City of New York*,
256 F. Supp. 3d 283 (S.D.N.Y. 2017) .............................................................................. 15

*TBK Partners, Ltd. v. W. Union Corp.*,
675 F.2d 456 (2d Cir. 1982) ............................................................................................. 19

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
No. 01-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) .......................................... 16

*Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) .............................................................................. 18

*Tiro v. Pub. House Investments, LLC*,
No. 11-7679, 2013 WL 2254551 (S.D.N.Y. May 22, 2013) ............................................ 12

*Torres v. Gristede's Operating Corp.*,
No. 04-3316, 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ........................................... 14

*Touhey v. United States*,
No. 08-1418, 2011 WL 3179036 (C.D. Cal. July 25, 2011) ............................................ 20

Vasco v. Power Home Remodeling Grp. LLC,
No. 15-4623, 2016 WL 5930876 (E.D. Pa. Oct. 12, 2016) ............................................. 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ........................................................................................... 9, 11

*Weigner v. City of N.Y.*,
852 F.2d 646 (2d Cir. 1988) ............................................................................................. 23

iv

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ................................................................................. 8, 12

*Williams v. First National Bank*,
  216 U.S. 582 (1910) ............................................................................................ 8

*Willix v. Healthfirst, Inc.*,
  No. 07-1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ...................................... 14

**Rules**

Federal Rule of Civil Procedure 23 .................................................................... passim

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (Third) § 30.42 (1995) ........................................ 11

Plaintiffs Robert Hamlen, Anthony Wagar, and David Eisig ("Plaintiffs" or "Representative Plaintiffs") submit this Memorandum of Law in support of their Motion for Final Approval of the Class Action Settlement as set forth in the Settlement Agreement, dated March 29, 2019 (the "Settlement" or "Settlement Agreement") (ECF No. 125-1) pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) and (e).

## INTRODUCTION

After hard-fought litigation, which included extensive motion practice, discovery, and investigation, and after extensive arm's length settlement negotiations taking place over two full days before a highly regarded JAMS mediator, Plaintiffs and Defendant Gateway Energy Services Corporation ("Gateway" or "Defendant") agreed to a settlement that would resolve the Actions.[1]

Plaintiffs sued Gateway to redress Gateway's deceptive and bad faith pricing practices that have caused thousands of consumers to pay considerably more for electricity and natural gas than what they should have paid. *See Hamlen v. Gateway Energy Services Corp.*, No. 16-3526 (S.D.N.Y.), ECF No. 84, ¶ 1; *Wagar v. Gateway Energy Services Corp. ("Wagar")*, No. 18-10244 (S.D.N.Y.), ECF No. 1, ¶ 1; *Eisig et al. v. Gateway Energy Services Corp.("Eisig")*, Index No. 605739/2016 (Sup. Ct. Nassau Cnty.), NYSCEF Doc. No. 24, ¶ 30. They allege that Gateway lured consumers into switching electricity and natural gas suppliers with false promises that it offers a market-based variable rate when, in reality, Gateway's variable rates are substantially higher than those otherwise available in the electricity and natural gas markets, and do not reflect changes in the wholesale cost Gateway pays for the electricity and natural gas it

---

[1] This motion pertains to the above-captioned actions and *Eisig et al. v. Gateway Energy Services Corp.*, Index No. 605739/2016 (Sup. Ct. Nassau Cnty. 2016) (collectively, "Actions") that by operation of Settlement Agreement and Final Approval will be voluntarily dismissed with prejudice.

supplies to retail consumers.  ECF No. 84, ¶ 3; *Wagar*, ECF No. 1, ¶ 3; *Eisig*, NYSCEF Doc. No. 24, ¶ 30.  Gateway denies these allegations and contends it has strong defenses and meritorious summary judgment arguments.

In *Hamlen*, discovery and motion practice were extensive.  The Parties fully briefed two sets of motions to dismiss relating to the original and amended complaints; filed and responded to several discovery motions; served and responded to written discovery requests; and participated in eight depositions, of Mr. Hamlen and seven Gateway employees.  Moreover, discovery involved a review of approximately 280 gigabytes of ESI.  Mr. Hamlen also retained an expert to investigate how to quantify class damages.  Although *Wagar* has not seen the same level of activity since its filing late last year, Class counsel anticipates equally extensive discovery and motion practice on the same issues.[2]

Following arm's length negotiations by the Parties, including a two-day mediation, the Parties entered into the Class Action Settlement Agreement.  *See* ECF No. 125-1.  The Settlement Agreement resolves all of the claims asserted in the Actions and confers substantial benefits on the Settlement Class, consisting of all Gateway customers who enrolled in a residential variable rate plan and, at any time during the applicable statute of limitations period, paid Gateway variable rates for electricity and/or natural gas supply services, in New Jersey, New York, Pennsylvania, Maryland, Virginia, Kentucky, and Ohio.  This Court granted preliminary approval of the Settlement on April 5, 2019, certifying a class for settlement purposes and authorizing the dissemination of class notice.  ECF No. 126.

Plaintiffs respectfully request that this Court now grant final approval.  First, the

---

[2] In *Eisig*, discovery and motion practice also occurred. The Parties fully briefed a motion to dismiss and the appeal of the decision and order denying the motion to dismiss, and Gateway deposed the plaintiffs.  Declaration of Paul M. Sod ¶ 9.

Settlement offers substantial benefits to Class members and avoids the delay, expense, and risks inherent in litigating class claims through trial and appeal.  The Settlement's value is estimated at up to $9,250,000, exclusive of the request for attorneys' fees and expenses, the cost of settlement administration, and service awards.  Second, the Settlement was the product of arm's length negotiations aided by an independent mediator and conducted by experienced counsel who obtained extensive formal and informal discovery in this Action and, as such, were well-positioned to evaluate the strengths and weaknesses of the claims and defenses asserted, the potential damages incurred by the Class, and the fairness of the Settlement.  Third, the positive response from the Class argues in favor of approving the Settlement.  As of July 12, 2019, only 10 Class members have opted out, and there have been zero objections to the Settlement.  Thus, Plaintiffs hereby apply for the entry of an order that will certify the proposed Class and finally approve the Settlement.

## BACKGROUND

## I.    THE LITIGATION

Before bringing the instant action, Plaintiffs' counsel exhaustively investigated Plaintiffs' claims and independently obtained copies of the relevant contractual terms and conditions, as well as samples of Gateway's marketing materials.  Plaintiffs' counsel also identified the relevant energy markets and the rates available from local utilities and other independent energy suppliers or ESCOs; researched what causes of action to assert against Gateway; and developed a theory of the case and litigation strategy.  *See* Declaration of Todd S. Garber ("Garber Decl.") ¶¶ 5-7, 9.

Mr. Hamlen filed his original complaint on May 11, 2016.  *See* ECF No. 1.  On July 26, 2016, Defendant moved to dismiss Mr. Hamlen's complaint for failure to state a claim.  *See* ECF Nos. 14, 15.  This Court issued its Opinion and Order on Gateway's motion on March 6, 2017,

sustaining Mr. Hamlen's implied duty of good faith and fair dealing claim. *See* ECF No. 28. Following preliminary discovery, Mr. Hamlen moved for leave to file an amended complaint on August 16, 2017, re-pleading violations of the New Jersey Consumer Fraud Act, breach of contract, and breach of the implied covenant of good faith and fair dealing. *See* ECF Nos. 56, 57. On December 8, 2017, Magistrate Judge Judith McCarthy issued an Opinion and Order (pursuant to this Court's referral) granting Mr. Hamlen leave to re-plead his New Jersey Consumer Fraud Act and breach of contract claims. *See* ECF No. 77.

Consistent with Judge McCarthy's Opinion and Order, Mr. Hamlen filed an amended complaint on December 18, 2017. *See* ECF No. 84. Gateway subsequently moved to dismiss Mr. Hamlen's amended complaint. *See* ECF Nos. 88, 89. On March 29, 2018, this Court issued an Opinion and Order denying Gateway's motion to dismiss, affirming Judge McCarthy's prior Opinion and Order determining that Mr. Hamlen adequately pleaded the New Jersey Consumer Fraud Act and breach of contract claims. *See* ECF No. 102.

Mr. Hamlen and Gateway also engaged in significant discovery, serving and responding to written discovery requests and participating in eight depositions, of Mr. Hamlen and seven Gateway employees. *See* Garber Decl. ¶¶ 3, 5, 9. Discovery also required a review of approximately 280 gigabytes of ESI corresponding to approximately 787,000 documents. *See* Garber Decl. ¶ 5. The parties zealously litigated discovery disputes which required this Court's intervention a number of times. *See, e.g.,* ECF Nos. 42, 43, 94. Mr. Hamlen also engaged an expert, Frank Felder, Ph.D., Director of the Center for Energy, Economic and Environmental Policy ("CEEEP") and Associate Research Professor at the Edward J. Bloustein School of Planning and Public Policy of Rutgers University, to quantify class damages. *See* Garber Decl. ¶ 5.

Informed by their fact and expert discovery efforts and motion practice, Mr. Hamlen and

Gateway decided to pursue settlement negotiations.  At their request, this Court stayed *Hamlen* on October 24, 2018, pending settlement negotiations and mediation.  ECF No. 112.

Plaintiff Wagar filed his complaint against Gateway on November 5, 2018, also asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the New Jersey Consumer Fraud Act.  *See Wagar*, ECF No. 1.  Prior to the filing of the complaint, the Parties had the benefit of investigating the claims and defenses in *Wagar* based on the motion practice in *Hamlen* and the voluminous data produced in that case.  They then decided, given that the issues in *Hamlen* and *Wagar* were substantially identical, to include *Wagar* in the settlement negotiations and forthcoming mediation.  *See* Garber Decl. ¶ 7.  Counsel for Plaintiffs Hamlen and Wagar also reached out to counsel for Plaintiff Eisig who confirmed they would support the settlement.  *See id.*  *Eisig* had been pending since July 28, 2016 in the New York Supreme Court. *See Eisig*, NYSCEF Doc. No. 1.  It survived a fully-briefed motion to dismiss by Gateway, but the decision and order denying the motion to dismiss is pending appeal.  *See Eisig*, NYSCEF Doc. Nos. 56, 57.

On February 4 and 5, 2019, the Parties engaged in mediation before JAMS mediator Hon. Diane M. Welsh.  *See* Garber Decl. ¶ 8.  It was only after extended arm's length negotiations under the auspices of Judge Welsh that they agreed to a settlement.  *See id.*  The Parties then separately negotiated and reached an agreement concerning attorneys' fees, litigation expenses, and service award payments to Plaintiffs.  *See id.*

The Parties then filed a motion for preliminary approval of the Settlement on March 29, 2019.  *See* ECF Nos. 123-25.  This Court thereafter granted the Plaintiffs' motion for preliminary approval.  *See* ECF No. 126.

The Parties recognize and acknowledge the benefits of settling the Actions.  Plaintiffs believe that the claims asserted in this case have merit and that the evidence developed to date supports their claims.  Despite the strengths of their claims, Plaintiffs are mindful of the challenges to proof under, and possible defenses to, the claims in these Actions.  Plaintiffs further recognize and acknowledge the expense and length of time it would take to prosecute this matter through trial, post-trial proceedings, and appeals.  Counsel for Plaintiffs have taken into account the uncertain outcome and risks of the litigation, including the difficulties and delays inherent in litigation and the likelihood of protracted appeals.  Counsel for Plaintiffs, therefore, determined that the Settlement Agreement is fair, reasonable, and adequate.  The Settlement Agreement confers substantial benefits upon, and is in the best interests of, Plaintiffs and the Settlement Class.

Gateway maintains that it has a number of meritorious defenses to the claims asserted in the Actions.  Nevertheless, it recognizes the risks and uncertainties inherent in litigation, the significant expense associated with defending class actions, the costs of any appeals, and the disruption to its business operations arising out of class action litigation.  It also recognizes the risk that a trial on class-wide claims might present.  Accordingly, Gateway believes that the Settlement Agreement is likewise in its best interests.

## II.     THE SETTLEMENT TERMS

The gravamen of Plaintiffs' claims is that Gateway represented that its rates reflected competitive prices in the market when those rates were often higher than average market rates.  Gateway contends that its disclosures with regard to rates were accurate and not misleading, and that its rates were commensurate with rates charged in the relevant markets.

Under the Settlement Agreement, Gateway, through the Settlement Administrator, shall pay Valid Claims up to $9,250,000, as follows:

a.  Gateway Variable Rate Customers shall receive $.00333 per kilowatt hour for electric supply service received from Gateway while on a variable rate plan.

b.  Gateway Variable Rate Customers shall receive $.02509 per therm (or therm equivalent) for natural gas supply service received from Gateway while on a variable rate plan.

c.  In the event that the Gateway Variable Rate Customer has more than one Household, then the Class Member may file another Claim seeking a Benefit in accordance with 5.1(a) and 5.1(b) and receive another Individual Settlement Amount for that additional Household.

Settlement Agreement ¶ 5.1, ECF No. 125-1.  In the event that Valid Claims exceed $9,250,000, the amount payable to each Gateway Variable Rate Customer will be reduced *pro rata* based on the individual's electric supply and/or natural gas supply use while on a variable rate plan.  *Id.* ¶ 5.2.  Any residual funds, including funds associated with checks not deposited within 90 days after the date of the check, shall revert to Gateway.  *Id.*, ¶¶ 5.3, 5.5.  Plaintiffs estimate that the average recovery per Class Member will be $78.80.  Declaration of Steven R. Platt of Angeion Group, LLC Regarding Settlement Administration ("Angeion Decl."), Exhibits B-C.

To claim settlement benefits, Class Members needed only to timely submit a Claim Form, either by mail or online through the Settlement Website, executed under penalty of perjury.  Settlement Agreement ¶¶ 5.1-5.4, ECF No. 125-1.  To facilitate the submission of Claim Forms, the Short-Form Notice mailed to Class Members included a pre-paid tear-off return Claim Form and an identification number unique to each Class Member that enabled Class Members to automatically populate certain information on the online Claim Form.  *Id.* ¶¶ 2.42, 6.8.  The Reminder Notice to be mailed to Class Members shall also include the same unique identification number.  *Id.* ¶ 2.38.  The Settlement Administrator is receiving, reviewing, and approving or rejecting Claim Forms pursuant to the standards and procedures set forth in the Settlement Agreement.  *Id.* ¶¶ 2.43, 6.1; Angeion Decl. ¶ 13.  Class Members are allowed to correct deficiencies in the Claim Form upon receipt of a

deficiency notice from the Settlement Administrator.  Settlement Agreement ¶ 2.43.

Gateway has also agreed not to oppose a request for attorneys' fees and expenses of up to

$2,543,750 and $100,000, respectively, as well as a request for Named Plaintiff Enhancement

Awards to Plaintiffs of up to $5,000 each.  *Id.*, ¶¶ 8.2, 8.3, 8.7.  Gateway shall pay any such awards

separately and apart from payments to the Settlement Class.  *Id.*, ¶ 8.3.  Gateway has also agreed to

separately pay for Settlement Administration Costs.  *Id.*, ¶ 8.6.

In return for making these settlement benefits available to all Settlement Class members, the

Settlement Class members' claims against Gateway will be dismissed with prejudice and all

Settlement Class members (other than those who opt-out of the Settlement Class) will release and be

permanently barred from pursuing any claims in accordance with the provisions of the Settlement

Agreement.  *Id.*, ¶ 11.1.

## ARGUMENT

## I.      STANDARD FOR APPROVAL OF A CLASS ACTION SETTLEMENT

Strong judicial policy favors the settlement of class actions.  *See Weinberger v. Kendrick*, 698

F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and

related expenses, for the general policy favoring the settlement of litigation.") (citing 3 Newberg,

Class Actions § 5570c, at 479-80 (1977); *Williams v. First National Bank*, 216 U.S. 582, 595

(1910)).  "Class action suits readily lend themselves to compromise because of the difficulties of

proof, the uncertainties of the outcome, and the typical length of the litigation.  There is a strong

public interest in quieting any litigation; this is particularly true in class actions."  *In re Luxottica

Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (citations omitted).

Courts assess proposed class action settlements to determine whether they are "fair,

reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To do so, courts must determine whether

both the negotiating process leading to a settlement and the settlement itself are fair, adequate and reasonable.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013) (Briccetti, J.) (approving class action settlement).  Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the negotiation enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *see also In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *4; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

When evaluating the fairness and adequacy of a proposed class settlement, courts in this Circuit are guided by the factors enunciated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) (abrogated on other grounds).  Those factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463.

The recent adoption of Rule 23(e)(2) does not displace the *Grinnell* factors.  *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note.  Rather, it "focus[es] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*  These "core concerns" are

> (A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)  the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

A consideration of *Grinnell* factors and Rule 23(e)(2)'s "core concerns" indicate that the Settlement Agreement is fair, reasonable, and adequate, and therefore, should be approved.

**A.** **FBFG And Plaintiffs Have Adequately Represented The Class.**

Plaintiffs have adequately represented the Settlement Class, satisfying Rule 23(e)(2)(A). But for the courage and initiative of Plaintiffs in bringing this lawsuit, the Settlement Agreement benefitting the Settlement Class would not have been reached.  Plaintiffs expended considerable time and effort, gathering and producing documents, recounting the facts of their cases, addressing factual issues in connection with their respective complaints, reviewing the complaints, and keeping abreast of case developments, including settlement negotiations.  Mr. Hamlen also responded to written discovery requests and sat for a lengthy deposition.

With respect to Plaintiffs' Counsel, "the focus . . . is on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2)(A) advisory committee's note.

Here, for over three years, FBFG engaged in extensive motion and discovery practice

before entering into the Settlement Agreement.  *See* Garber Dec., ¶¶ 3-6.  On behalf of Mr.

Hamlen, it defeated two motions to dismiss, twice amended the complaint, propounded and

responded to written discovery requests, reviewed approximately 280 gigabytes of ESI

corresponding to approximately 787,000 documents, filed letters concerning various discovery

disputes, and participated in eight depositions.  *Id.*, ¶¶ 3-5.  It also retained an expert to

investigate how to measure and quantify damages to the Class and drafted a class certification

motion that was ready for filing.  *Id.*, ¶ 5.  FBFG also prepared for and engaged in arm's length

settlement negotiations with Gateway, including mediation.  *Id.*, ¶¶ 7, 8.  Thus, FBFG fully

appreciated the strengths and weakness of the Actions before entering into the Settlement

Agreement.  KS&G also performed in an exemplary fashion, and its litigation against Gateway

on behalf of a similar class in *Bell v. Gateway Energy Services Corp.*, No. 17-3893 (S.D.N.Y.),

and its extensive experience litigating similar cases against other energy service companies

("ESCO") speak to its judgment that the Settlement is fair.  *See* KS&G Firm Resume, attached as

Exhibit 1 to the Declaration of Jonathan Shub ("Shub Decl.").

**B.      The Settlement Agreement Was Negotiated At Arm's Length.**

"A presumption of fairness, adequacy, and reasonableness may attach to a class

settlement reached in arm's-length negotiations between experienced, capable counsel after

meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX

LITIGATION (Third) § 30.42 (1995)) (internal quotations marks omitted).  Where a settlement is

achieved through arm's-length negotiations by experienced counsel and there is no evidence of

fraud or collusion, "[courts] should be hesitant to substitute [their] judgment for that of the

parties who negotiated the settlement."  *In re EVCI Career Colleges Holding Corp. Sec. Litig.*,

No. 05-10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

The Settlement Agreement is the product of serious, informed, non-collusive negotiations. Settlements are generally found to be non-collusive when reached with the assistance of a third-party neutral and in such situations enjoy a presumption that the settlement meets the requirements of due process. *See, e.g.*, *Saldana v. Middletown Car-G-Cam Uni Corp.*, No. 15-3651, 2015 WL 12591678, at *2 (S.D.N.Y. Sept. 23, 2015) (noting that the assistance of "experienced" mediator Hon. Diane Welsh (Ret.) reinforces the settlement's non-collusive nature); *Tiro v. Pub. House Investments, LLC*, No. 11-7679, 2013 WL 2254551, at *2 (S.D.N.Y. May 22, 2013); Vasco v. Power Home Remodeling Grp. LLC, No. 15-4623, 2016 WL 5930876, at *5 (E.D. Pa. Oct. 12, 2016) (The parties negotiated the Settlement Agreement at arm's length with the benefit of a neutral, experienced mediator, Judge Welsh). Settlement decisions are found to be informed where the parties exchanged evidence and information prior to negotiations. *See, e.g.*, *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006) (holding that settlement was fair, reasonable, and adequate where, *inter alia*, the parties had begun conducting discovery). Here, extensive motion practice and discovery informed settlement negotiations, including mediation before Judge Welsh (Ret.) an eminently qualified mediator. As such, Rule 23(e)(2)(B) is satisfied.

**C.    The Litigation Is Complex And Will Be Expensive And Lengthy.**

The Settlement Agreement provides substantial monetary benefits to the Settlement Class while avoiding the significant expenses and delays attendant to discovery and motion practice related to summary judgment and additional class certification briefing. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (citation

omitted) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

Absent an approved settlement, the Parties in the Actions will be forced to continue litigation. The resulting fact-intensive trial will also result in significant expenses to all Parties. Any judgment will likely be appealed, extending the costs and duration of the litigation. The Settlement Agreement, on the other hand, will result in prompt and equitable payments to the Settlement Class. Thus, this *Grinnell* factor weighs in favor of the Settlement and satisfies Rule 23(e)(2)(C)(i).

**D.    Plaintiffs Face Substantial Hurdles In Establishing Liability.**

Final approval of the Settlement Agreement should be granted because Plaintiffs face substantial hurdles in establishing liability. Indeed, "[l]itigation inherently involves risks." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).

For example, Gateway argues that its disclosures in customer agreements concerning the nature of variable rates and how it sets these were adequate. It also asserts numerous affirmative defenses, including waiver, laches, and estoppel through voluntary payment of the variable rates. If Gateway can prove these defenses, establishing liability will be quite difficult. *See, e.g. Richards v. Direct Energy Servs., LLC*, 915 F.3d 88 (2d Cir. 2019) (affirming summary judgment in favor of ESCO). While hopeful and confident they will ultimately prevail in proving Gateway's liability, the Settlement Agreement avoids the risks inherent in further litigation. Thus, this factor weighs in favor of the Settlement and satisfies Rule 23(e)(2)(C)(i).

**E.    Plaintiffs Face Substantial Hurdles In Proving Damages.**

In order to prove damages, Plaintiffs must prove that Gateway's variable rates are not competitive or commensurate with those otherwise available in the relevant markets; that Gateway falsely represented that they would be; and that Gateway's disclosures concerning the

nature of and the pricing methodology for Gateway's variable rates are inadequate and misleading.  This is an expensive and potentially challenging task.  Moreover, nothing precludes Gateway from retaining a damages expert to refute the findings of Dr. Felder, in particular, that Gateway charged a commercially unreasonable profit margin in setting its variable rates.  While Plaintiffs are confident Dr. Felder's findings would withstand scrutiny by Gateway's expert, proving damages is nonetheless a substantial and daunting undertaking.  Thus, there are substantial obstacles Plaintiffs must overcome to prove damages in this case, a factor favoring approval of the Settlement Agreement and satisfying Rule 23(e)(2)(C)(i).

**F.      Maintaining The Class Action Through Trial May Be Challenging.**

Plaintiffs are confident in their ability to maintain this action as a class through trial. Nonetheless, they recognize that there are substantial hurdles in being able to do so.  Defendants will no doubt move for decertification, highlighting the inherent risks and expense of maintaining a class through trial.  *See Torres v. Gristede's Operating Corp.*, No. 04-3316, 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) *aff'd,* 519 F. App'x 1 (2d Cir. 2013) ("The risk of maintaining class status throughout trial also weighs in favor of final approval.  Defendant would likely move to decertify, requiring another round of briefing.  Defendant may also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f).  Settlement eliminates the risk, expense, and delay inherent in this process."); *Willix v. Healthfirst, Inc.*, No. 07-1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (same).  The proposed Settlement avoids the risks inherent in further litigation, and therefore, this factor weighs in favor of approval.  Thus, this factor weighs in favor of the Settlement and satisfies Rule 23(e)(2)(C)(i).

**G.      Gateway May Not Be Able To Withstand A Substantially Greater Judgment.**

The ability of Gateway to withstand a substantially greater judgment is by no means

assured.  While Plaintiffs have no concern that Gateway has the ability to pay all claims made in the context of this Settlement Agreement, there is no certainty it could bear the enormously large statutory and compensatory damages award that could be assessed were the cases to proceed through trial.  In any event, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9.  Thus, this factor weighs in favor of the Settlement and satisfies Rule 23(e)(2)(C)(i).

**H.    The Settlement Amounts Are Reasonable In Light Of The Best Possible Recovery And In Light Of All The Attendant Risks Of Litigation.**

The adequacy of a settlement amount offered should be judged "in light of the strengths and weaknesses of the plaintiffs' case."  *Stinson v. City of New York,* 256 F. Supp. 3d 283, 294 (S.D.N.Y. 2017).  That the settlement amount is less than the maximum potential recovery is not a barrier to approval.  *See Grinnell Corp.*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").   Indeed, judging whether a settlement is reasonable "is not susceptible of a mathematical equation yielding a particularized sum."  *In re Michael Milken and Associates Sec. Lit.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993).

Here, there is a broad range of potential recovery if the Actions were to be litigated through trial.  On the one hand, Plaintiffs could prevail on their claims and recover the difference between Gateway's variable rates and the rates charged by local utilities and other alternative suppliers, or between Gateway's variable rates and what the rates would have been had Gateway charged a commercially reasonable profit margin.  In addition, consumers can receive statutory penalties under state law.  On the other hand, Gateway could prevail on its legal arguments to defeat liability entirely, resulting in no recovery for class members.  Given this broad range of

possible damages, the Settlement Agreement provides a substantial recovery that falls well within the range that courts have traditionally found to be fair and adequate under the law.

Moreover, the fact that the Settlement Agreement provides for a prompt payment to claimants favors approval of the settlement. *See Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004) ("[T]he proposed Settlement provides for payment to Class members now, not some speculative payment of a hypothetically larger amount years down the road.  Given the obstacles and uncertainties attendant to this complex litigation, the proposed Settlement is within the range of reasonableness, and is unquestionably better than the other likely possibility – little or no recovery.") (citing *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.") (modified on other grounds)).

In fact, this Settlement compares favorably with other class settlements involving consumer claims against alternative energy suppliers relating to allegedly misleading variable market rate claims.  *See Chen v. Hiko Energy, LLC*, No. 14-1771 (S.D.N.Y.) (Briccetti, J.), ECF Nos. 83, 93 (providing a settlement with a per-class member cash option cap of $60); *Vitale v. U.S. Gas & Electric, Inc.*, No. 14-4464 (D.N.J.), ECF Nos. 53, 63 (providing a $1,825,000 cash fund to be paid to class members, resulting in a $4.60 per-class member per-energy service cap). Thus, this factor militates in favor of the Settlement Agreement and satisfies Rule 23(e)(2)(C)(i).

## I.   The Settlement Agreement Facilitates Claims Submission And Processing, And The Distribution Of Benefits To The Settlement Class.

The Settlement Agreement provides for a convenient and efficient way of submitting and processing claims.  The Class Members may submit claims online through the Settlement Website or by mail.  *See* Settlement Agreement ¶ 5.1.  To facilitate the submission of Claim Forms, the Short-

Form Notice mailed to Class Members includes a pre-paid tear-off return claim form. *Id.*, ¶¶ 2.42, 6.8. A Class Member has the ability to search for a particular property on the Settlement Website; to use the unique identifying number assigned by the Short-Form Notice and Reminder Notice to automatically populate the online form and find out the payment associated with the property; and to update his or her mailing address online. *Id.*, ¶¶ 2.38, 2.42, 6.8, 6.9. The Claims Administrator is receiving, reviewing, and approving or rejecting claims according to the standards and procedures set forth in the Settlement Agreement. *Id.*, ¶¶ 2.43, 6.1.

The Settlement Agreement also provides for an efficient way of distributing settlement benefits to the Class. Within 14 days after the Effective Date of the Settlement, the Settlement Administrator shall establish a non-interest bearing checking account at a federally insured depository institution. *Id.*, ¶ 6.13. Then, within 30 days of the Effective Date, Gateway shall deliver to the Settlement Administrator the aggregate amount of funds to be deposited in the account. *Id.*, ¶ 6.14. Within 14 days after funding of the account, the Settlement Administrator shall draw and mail checks payable to Class Members with Valid Claims, remailing undeliverable checks to the extent valid current addresses are available (including by means of a one-time skip trace). *Id.*, ¶ 6.15. Thus, Rule 23(e)(2)(C)(ii) is satisfied.

**J.      Class Counsel Fees Were Separately Negotiated And
         Would Not Diminish The Benefits To The Settlement Class.**

Pursuant to the Settlement Agreement, Gateway has agreed not to oppose a request for attorneys' fees and expenses (collectively, "Class Counsel Fees") of up to $2,543,750 and $100,000, respectively. *Id.*, ¶ 8.2. Gateway shall pay any such award separately and apart from payments to the Settlement Class. *Id.*, ¶ 8.3. Thus, payment of Class Counsel Fees shall not diminish the benefits to the Settlement Class. Moreover, the Parties negotiated Class Counsel Fees only after reaching an agreement on the substantive terms of the Settlement. *See* Garber Dec., ¶ 8. In fact, the Settlement

Agreement provides that "[c]ourt approval of Class Counsel's Fee Award will not be a condition of the Settlement." *Id.*, ¶ 8.5. Thus, Rule 23(e)(2)(C)(iii) is satisfied.

**K.    There Are No Agreements To Identify Pursuant To Rule 23(e)(3).**

Parties seeking the approval of a settlement are required to identify any agreement made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii) and 23(e)(3). There are no such agreements requiring identification.

**L.    The Settlement Agreement Treats Class Members Equitably Relative To Each Other.**

Rule 23(e)(2)(D) is satisfied. The Settlement Agreement treats Gateway's variable rate customers equally by allowing recovery of benefits based on the same rate, $.00333/kWh for electricity and $.02509/therm for natural gas.

**M.    The Reaction Of The Class Was Overwhelmingly Positive.**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citing *In re American Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) (citation omitted)).

Here, Class member response to the Settlement was overwhelmingly positive.

First, as of July 12, 2019, ten Class members have opted out of the Settlement, and zero Class members have objected. *See* Angeion Decl. ¶ 14.[3]  The fact that there are 10 opt-outs and zero objections is especially noteworthy, as "the notice and approval process generally solicits negative feedback regarding a settlement, because it is designed to solicit opt outs and objections by advising class members of the procedures and deadlines for filing such responses with the court. . . . [I]n litigation involving a large class, such as that here, it would be extremely unusual not to encounter

---

[3] The deadline to object or request exclusion is August 1, 2019.

objections." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 197 (S.D.N.Y. 2012).  And

courts routinely find that the reaction of the class is positive and weigh this factor in favor of

approval even when there are more objections and opt-outs.  *See, e.g.*, *Charron*, 874 F. Supp. 2d at

196 (118 objectors from a class of 22,000); *In re Nissan Radiator/Transmission Cooler Litig.*, 2013

WL 4080946, at *6 (finding reaction of class positive when there were 198 opt-outs and 85

objections in class of 764,277); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 457

(S.D.N.Y. 2004) (noting that there were 12 objectors and 9 opt-outs from a class of a million and

holding that "[t]hese extremely low numbers of objectors and opt-outs strongly support settlement

approval.").[4]

Second, "the prevailing rule of thumb with respect to consumer class actions is [a claims rate

of] 3-5 percent."  *Ferrington v. McAfee, Inc.*, No. 10-1455, 2012 WL 1156399, at *4 (N.D. Cal. Apr.

6, 2012); *see also In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *6

(approving class action settlement when claims rate was less than 2%).  Here, as of July 12, 2019,

2019, 17,444 or 14.9% of the Class have submitted claims, Angeion Decl. ¶¶ 6, 13, with more claims

expected as the August 1, 2019 deadline to submit claims approaches.  In a consolidated action

alleging essentially identical claims as those alleged against Gateway, Judge Briccetti of the Southern

District of New York approved a claims-made class settlement with a lower claims rate.  *See*

Memorandum of Law in Support of Uncontested Motion for Final Approval of Class Action

Settlement, Attorneys' Fees and Expenses, and Names Plaintiffs' Enhancement Awards at 15, *In re:*

*HIKO ENERGY LLC, Energy Litigation*, No. 14-1771 ("*In re: HIKO*"), ECF No. 83 (S.D.N.Y. Apr.

25, 2016), (noting claims rate of 3.14% of 185,593 member class as of three weeks in advance of the

---

[4] In fact, courts in this District have approved settlements even when a majority of the class
objected.  *See, e.g.*, *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1325 (2d Cir.
1990) (approving settlement where "a majority" of class objected); *TBK Partners, Ltd. v. W.
Union Corp.*, 675 F.2d 456, 462 (2d Cir. 1982) (between 54 and 58 percent of class objected).

deadline); Final Approval Order at 3-4, *In re: HIKO*, ECF No. 93 (S.D.N.Y. May 9, 2016) (finally approving settlement, finding that the "notice, opt-out and claims submission procedures . . . fully satisfy Rule 23 . . . and the requirements of due process" and that the settlement was "fair, reasonable, and adequate").

Indeed, courts have approved claims-made class settlements where the claims rate was substantially lower. *See, e.g.*, *Poertner v. Gillette Co.*, 618 Fed. Appx. 624,  625-26 (11th Cir. 2015) (unpublished) (approving 7.26 million-member settlement class when just 55,346 -- less than 1% -- filed claims); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (approving 10.3 million-member settlement class when less than 119,000 -- approximately 1.1% -- filed claims); *Touhey v. United States*, No. 08-1418, 2011 WL 3179036, at *7-8 (C.D. Cal. July 25, 2011) (finding a 2% response rate acceptable -- 38 responses out of 1,875 notices mailed -- where there were no objections and the overall recovery was fair and reasonable); *Arthur v. SLM Corp.*, No. 10-198 (W.D. Wash. Aug. 8, 2012), ECF No. 249 at 2-3 (claims rate of approximately 2%).  Although courts look to claims rate to gauge class reaction to a proposed settlement, "[t]he question for the Court at the Final Fairness Hearing stage is whether the settlement provided to the class is 'fair, reasonable, and adequate,' not whether the class decides to actually take advantage of the opportunity provided." *Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749, 2014 WL 5419507, at *5 (S.D. Fla. Oct. 24, 2014).

The pittance of opt-outs (0.008%) and lack of any objections to date, coupled with a claims rate substantially higher than typical of consumer class actions, weighs heavily in favor of the Settlement.

**N.**     **The Current Stage Of The Instant Litigation And The
Extensive Discovery That Has Occurred Favor Final Approval.**

This Action has been pending for years and the legal issues in this case have been thoroughly

vetted.  Plaintiffs' counsel conducted a thorough investigation of Plaintiffs' claims, and Defendant's

counsel did so as well.  The Parties engaged in extensive discovery, although completion of

discovery is not a prerequisite to settlement approval.  *See In re Austrian & German Bank Holocaust

Litig.*, 80 F. Supp. 2d at 176 ("'To approve a proposed settlement, the Court need not find that the

parties have engaged in extensive discovery . . . it is enough for the parties to have engaged in

sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the

Settlement.'  Additionally, 'the pretrial negotiations and discovery must be sufficiently adversarial

that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts

helpful to the prosecution of the suit.'") (citing *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir.

1982) and quoting *Martens v. Smith Barney, Inc.,* 181 F.R.D. 243, 263 (S.D.N.Y. 1998)); *In re

Nissan Radiator/Transmission Cooler Litig*., 2013 WL 4080946, at *6-7 (there need only have been

sufficient investigation and discovery for the parties to understand the strengths and weaknesses of

the case and extensive discovery is not necessary).  The parties also engaged in arm's-length

negotiations through experienced mediators.  In the mediations, the parties exchanged briefs and

research.  Thus, each side had a thorough understanding of the case and were well-positioned to

evaluate the merits of the Action before reaching a settlement.  Given the extent of motion practice

and discovery that preceded and informed the settlement negotiations, final approval of the

Settlement is warranted.

**III.     NOTICE WAS PROVIDED IN THE BEST PRACTICABLE MANNER.**

Rule 23(c)(2)(B) requires that class members receive "the best notice that is practicable under

the circumstances, including individual notice to all members who can be identified through

reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The Rule also requires that any such notice clearly

and concisely state in plain, easily understood language: the nature of the action; the definition of the

class certified; the class claims, issues, or defenses; that a class member may enter an appearance

through an attorney if the member so desires; that the court will exclude from the class any member

who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a

class judgment on class members under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

 Here, the Court approved the form and content of the proposed Long Form Notice and Short

Form Notice (attached to Angeion Decl. as Exhibits A-C) (collectively, "Class Notice") and

approved the Parties' proposal to distribute the Short Form Notice and Reminder Notice by U.S.

Mail and the Long Form Notice via the Internet.  ECF No. 126 at 4.  The Court further found that

"the Parties' proposal regarding class notice to potential class members constitutes the best notice

practicable under the circumstances and complies fully with the notice requirements of due process

and Fed. R. Civ. P. 23."  *Id.*

 Pursuant to the schedule approved by the Court for the dissemination of the Class Notice, the

Settlement Administrator mailed the Short Form Settlement Notice to Class members on May 3,

2019, after confirming and updating the mailing addresses using the National Change of Address

database, and re-mailed notices returned undeliverable after conducting a one-time skip trace.

Angeion Decl. ¶¶ 5-7.  The Settlement Administrator also established a website at

www.GatewayEnergySettlement.com, containing all the information required by this Court and a

dedicated toll-free phone number for inquiries from Class members.  Angeion Decl. ¶ 9.

 "It is clear that for due process to be satisfied, not every class member need receive actual

notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'"  *In

re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting

*Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)).  The Federal Judicial Center notes that a notice plan is reasonable if it reaches at least 70% of the class.  *See* Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010).  The notice plan here easily meets these standards, as it provided direct notice to 95% of the Settlement Class.  *See* Angeion Decl. ¶¶ 6-7.  Accordingly, this Court should grant final approval of the Settlement.

## IV.   THE COURT SHOULD CERTIFY THE CLASS.

Plaintiffs moved to preliminarily certify the Class for settlement purposes, and the Court granted the motion on April 5, 2019.  *See* ECF No. 126.  For the reasons stated in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 124), this Court should certify the Class for settlement purposes.

## <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court finally approve the Settlement Agreement.

Dated:  White Plains, New York
        July 17, 2019

**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**

By: */s/ Todd S. Garber*
Todd S. Garber
D. Greg Blankinship
Jean M. Sedlak
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
tgarber@fbfglaw.com
gblankinship@fbfglaw.com
jsedlak@fbfglaw.com