**NITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ROBERT HAMLEN,

                Plaintiff,

v.

GATEWAY ENERGY SERVICES
CORPORATION,

                Defendant.

Civil Action

Case No: 7:16-cv-03526-VB-JCM

ANTHONY WAGAR,

                Plaintiff,

v.

GATEWAY ENERGY SERVICES
CORPORATION,

                Defendant.

Case No: 7:18-cv-10244

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN SUPPORT OF UNCONTESTED MOTION FOR**
**ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD PAYMENTS**

## <u>TABLE OF CONTENTS</u>

**Page No.**

Table of Authorities ........................................................................................................ ii

I.      Introduction ......................................................................................................... 1

II.     The Court Should Approve The Requested Award Of Attorneys' Fees And Expenses .... 4

        A.      Class Counsel Is Entitled To Compensation
                Under Either The Percentage Method Or The
                Lodestar  Method, But The Percentage Method Is Preferred. ................................ 4

        B.      The Requested Fee Is Justified Under The Percentage Method. ........................... 7

                1.      The Time And Labor Expended By Class Counsel ................................... 7

                2.      The Magnitude And Complexity Of The Litigation ................................. 9

                3.      The Risk Of The Litigation .................................................................... 10

                4.      The Quality Of Representation ............................................................... 12

                5.      The Requested Fee In Relation To The Settlement ................................ 13

                6.      Public Policy Considerations ................................................................. 14

        C.      The Fee Is Justified Under The Lodestar/Multiplier Method. ............................. 15

        D.      The Reaction Of The Class Is Overwhelmingly Favorable. ................................ 19

III.    The Expenses Incurred Are Reasonable And
        Were Necessary to Achieve the Benefit Obtained............................................................ 20

IV.     Plaintiffs Are Entitled To The Requested Service Award ................................................ 21

V.      Conclusion ...................................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Page(s)

*Aros v. United Rentals, Inc.*,
No. 10-73, 2012 WL 3060470 (D. Conn. July 26, 2012) ....................................................... 6, 11

*Asare v. Change Grp. of New York, Inc.*,
No. 12-3371, 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ................................................... 23

*Beckman v. KeyBank, N.A.*,
No. 12-7836, 2013 WL 1803736 (S.D.N.Y. Apr. 29, 2013) ................................................ 6, 13

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ................................................................................................................ 4

*Chin v. RCN Corp.*,
No. 08-7349, 2010 WL 3958794 (S.D.N.Y. Sept. 8, 2010) ................................................... 17

*Clark v. Ecolab Inc.*,
No. 04-4488, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) ................................................... 23

*Comverse Tech., Inc. Sec. Litig.*, No. 06-1825,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) ........................................................................ 17

*deMunecas v. Bold Food, LLC*,
No. 09-440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ................................................ 16, 18

*Dial Corp v. News Corporation.*,
317 F.R.D. at 439 (S.D.N.Y 2016) ......................................................................................... 22

*Dornberger v. Metropolitan Life Ins. Co.*,
203 F.R.D. 118 (S.D.N.Y. 2001) ............................................................................................ 23

*Gilliam v. Addicts Rehab. Ctr. Fund*,
No. 05-3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ..................................................... 7

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ......................................................................................... 4, 7, 11, 15

*Guippone v. BH S & B Holdings, LLC*,
No. 09-1029, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ................................................... 22

*Hall v. ProSource Techs. LLC*,
No. 14-2502, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) ................................................... 14

*Hayes v. Harmony Gold Mining Co.*,
No. 08-03653, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) ................................................ 6, 13

*Hernandez v. Merrill Lynch & Co., Inc.*,
  No. 11-8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013)...........................................6, 16, 18

*Hicks v. Morgan Stanley*,
  No. 01-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...................................................5, 6

*In re Abrams & Abrams, P.A.*,
  605 F.3d 238 (4th Cir. 2010) ...........................................................................................................15

*In re Brown Co. Sec. Litig.*,
  355 F. Supp. 574 (S.D.N.Y. 1973) ................................................................................................10

*In re China Sunergy Sec. Litig.*,
  No. 07-7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011)..............................................20, 21

*In re Flag Telecom Holdings Ltd. Sec. Litig.*,
  No. 02-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ....................................4, 16, 17, 20

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-8557, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)..............................................17, 21

*In re Marsh Erisa Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010)........................................................................................6, 11, 13

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  No. 02-1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ........................................................21

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ....................................................................................................18

*In re Nissan Radiator/Transmission Cooler Litig.*,
  No. 10-7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013)....................................................17

*In re Polaroid*,
  No. 03-8335, 2007 WL 2116398 (S.D.N.Y. July 19, 2007)..........................................6, 7, 23

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  912 F. Supp. 97 (S.D.N.Y. 1996) ...................................................................................................19

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ............................................................................................................19

*In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices & Prods. Liab. Litig.*,
  No. 09-2102, 2010 WL 3422722 (S.D.N.Y. Aug. 24, 2010) ...................................................20

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999) .............................................................................................5

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................. passim

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989) ........................................................................ 18

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05-01695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ........................ 5, 11, 21

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) .................................................................... 19

*Johnson v. Brennan*,
   No. 10-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) .................................. 23

*Kemp-Delisser v. Saint Francis Hosp. & Med. Ctr.*,
   No. 15-1113, 2016 WL 6542707 (D. Conn. Nov. 3, 2016) ............................. 11, 18

*Masters v. Wilhelmina Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2007) .................................................................................... 6

*Matheson v. T-Bone Rest., LLC*,
   No. 09-4214, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) .................................. 23

*McDaniel v. Cty. of Schenectady*,
   595 F.3d 411 (2d Cir. 2010) .................................................................................... 6

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ................................................................................................ 18

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   No. 06-4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .................................... 7

*Ramirez v. Lovin' Oven Catering Suffolk, Inc.*,
   No. 11-520, 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) ...................................... 16

*Reyes v. Altamarea Grp., LLC*,
   No. 10-6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) .................................. 23

*Reyes v. Buddha-Bar NYC*,
   No. 08-2494, 2009 WL 5841177 (S.D.N.Y. May 28, 2009) .................................. 23

*Richards v. Direct Energy Servs., LLC*,
   915 F.3d 88 (2d Cir. 2019) ...................................................................................... 12

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997) .......................................................................... 22

*Silberblatt v. Morgan Stanley & Morgan Stanley DW Inc.,*
  524 F. Supp. 2d 425 (S.D.N.Y. 2007) ................................................................. 18

*Spicer v. Pier Sixty LLC,*
  No. 08-10240, 2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012) ........................... 16, 18

*Steiner v. Williams,*
  No. 99-101186, 2001 WL 604035 (S.D.N.Y. May 31, 2001) ..................................... 4

*Stinson v. City of New York,*
  256 F. Supp. 3d 283 (S.D.N.Y. 2017) ................................................................. 14

*Sukhnandan v. Royal Health Care of Long Island,*
  No. 12-4216, 2014 WL 3778173 (S.D.N.Y July 31, 2014).................................. 22

*Surdu v. Madison Glob., LLC,*
  No. 15-6567, 2018 WL 1474379 (S.D.N.Y. Mar. 23, 2018).................................. 14

*Techs. Corp.,*
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................... 5, 16, 17, 18

*Torres v. Gristede's Operating Corp.,*
  519 Fed. Appx. 1 (2d Cir. 2013).......................................................................... 6

*Torres v. Gristede's Operating Corp.,*
  No. 04-3316, 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010).................................. 22

*Trustees v. Greenough,*
  105 U.S. 527 (1881) ................................................................................................ 4

*Viafara v. MCIZ Corp.,*
  No. 12-7452, 2014 WL 1777438 (S.D.N.Y. May 1, 2014)..................................... 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005) ............................................................................... 5, 6

*Woburn Ret. Sys. v. Salix Pharms., Ltd.,*
  No. 14-8925, 2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ................................. 11

*Wright v. Stern,*
  553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................. 23

*Yuzary v. HSBC Bank USA, N.A., No.,*
  12-3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ........................................... 22

*Zeltser v. Merrill Lynch & Co., Inc.,*
  No. 13-1531, 2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) ................................. 16

Plaintiffs Robert Hamlen, Anthony Wagar, and David Eisig ("Plaintiffs" or "Representative Plaintiffs") (collectively, "Plaintiffs"), on behalf of the class (the "Class"), submit this Memorandum of Law in Support of their Uncontested Motion for Attorneys' Fees, Expenses, and Service Award Payments ("Motion for Fees").

## I.      <u>INTRODUCTION</u>

Plaintiffs are electricity and natural gas consumers of Defendant Gateway Energy Services Corporation ("Gateway" or "Defendant").  Gateway is an independent energy supply company (or "ESCO") that sells electricity and gas in deregulated markets across the United States.  Plaintiffs sued Gateway to redress Gateway's deceptive and bad faith pricing practices that have caused thousands of consumers to pay considerably more for electricity and natural gas than what they should have paid.  *See Hamlen v. Gateway Energy Services Corp.*, No. 16-3526 (S.D.N.Y.), ECF No. 84, ¶ 1; *Wagar v. Gateway Energy Services Corp. ("Wagar")*, No. 18-10244 (S.D.N.Y.), ECF No. 1, ¶ 1; *Eisig et al. v. Gateway Energy Services Corp.("Eisig")*, Index No. 605739/2016 (Sup. Ct. Nassau Cnty.), NYSCEF Doc. No. 24, ¶ 30 (collectively "Actions").

They allege that Gateway lured consumers into switching electricity and natural gas suppliers with false promises that it offers a market-based variable rate when, in reality, Gateway's variable rates are substantially higher than those otherwise available in the electricity and natural gas markets, and do not reflect changes in the wholesale cost Gateway pays for the electricity and natural gas it supplies to retail consumers.  ECF No. 84, ¶ 3; *Wagar*, ECF No. 1, ¶ 3; *Eisig*, NYSCEF Doc. No. 24, ¶ 30.  Gateway denies these allegations and contends it has strong defenses and meritorious summary judgment arguments.

Before taking on this, Class Counsel exhaustively investigated the viability of the claims against Defendant.  In *Hamlen*, discovery and motion practice were extensive.  The Parties fully briefed two sets of motions to dismiss relating to the original and amended complaints; filed and responded to several discovery motions; served and responded to written discovery requests; and participated in eight depositions, of Mr. Hamlen and seven Gateway employees.  Moreover, discovery involved a review of approximately 280 gigabytes of ESI.  Mr. Hamlen also retained an expert to investigate how to quantify class damages.  Although *Wagar* has not seen the same level of activity since its filing late last year, Class Counsel anticipate equally extensive discovery and motion practice on the same issues.[1]

Following arm's length negotiations by the Parties, including a two-day mediation, the Parties entered into the Class Action Settlement Agreement.  *See* ECF No. 125-1.  The Settlement Agreement resolves all of the claims asserted in the Actions and confers substantial benefits on the Settlement Class, consisting of all Gateway customers who enrolled in a residential variable rate plan and, at any time during the applicable statute of limitations period, paid Gateway variable rates for electricity and/or natural gas supply services, in New Jersey, New York, Pennsylvania, Maryland, Virginia, Kentucky, and Ohio.  This Court granted preliminary approval of the Settlement on April 5, 2019, certifying a class for settlement purposes and authorizing the dissemination of class notice.  ECF No. 126.

Plaintiffs respectfully request that this Court now grant final approval and Plaintiffs' Motion for Fees.  First, the Settlement offers substantial benefits to Class members and avoids the delay, expense, and risks inherent in litigating class claims through trial and appeal.  The

---

[1] In *Eisig*, discovery and motion practice also occurred. The Parties fully briefed a motion to dismiss and the appeal of the decision and order denying the motion to dismiss, and Gateway deposed the plaintiffs.  Declaration of Paul M. Sod ¶ 9.

Settlement provides relief valued at $11,893,750.00.[2]  Second, the Settlement was the product of arm's length negotiations aided by an independent mediator and conducted by experienced Class Counsel who obtained extensive formal and informal discovery in this Action and, as such, were well-positioned to evaluate the strengths and weaknesses of the claims and defenses asserted, the potential damages incurred by the Class, and the fairness of the Settlement.  Third, the positive response from the Class argues in favor of approving the Settlement and approval of the fee request.  As of July 12, 2019, only 10 Class members have opted out, and there have been zero objections to the Settlement.  Thus, Class Counsel respectfully requests an award of attorneys' fees and expenses in the amount of $2,543,750 and $100,000, respectively.  The attorneys' fees of $2,543,750 (exclusive of costs) represents only 21.39% of the value of the settlement.  The requested amount represents a negative lodestar multiplier of 0.91, well below the range of awards commonly approved within this Circuit.

Pursuant to the Settlement, Defendant has agreed to not contest the amount requested.

The Court should award the amount requested because it falls well below the range of awards commonly approved within this Circuit using either the percentage of fund or lodestar methodology.  Moreover, the fee request was disclosed in advance to the Class pursuant to the notice program approved by the Court, and to date there are no objections.

Class Counsel also requests that the Court approve the payment of Representative Plaintiff Service Awards in the amount of $5,000.00 each to the Plaintiffs.  As with Class Counsel's fee request, the service award request was subject to arm's length negotiations between parties, is comparable to other service award payments in other class actions and was

---

[2] The Settlement valued at $11,893,750.00 includes the total cash payments, or the Benefit, available to Class Members in the amount of $9,250,000 (see Settlement agreement ¶¶ 2.5, 5.2, ECF No. 125-1); plus Attorneys' Fees' and Costs in the amount of $2,543,750 and $100,000 respectively (see id. ¶ 8.2).

adequately disclosed in advance to the Class and has been met with no objections.  Gateway has agreed to pay the requested service awards the Court approves up to this requested amount, which is separate and apart from the benefit to be received by Class members and in no way diminishes their recovery.

## II.     THE COURT SHOULD APPROVE THE <u>REQUESTED AWARD OF ATTORNEYS' FEES AND EXPENSES</u>

Class Counsel have spent substantial time and resources investigating the matter and actively litigating against Defendant for more than three years.  It is only fair that they be compensated commensurately for their hard work, the outstanding results they have achieved, and the expenses they have incurred.  As shown below, an award of $2,543,750, representing 21.39% of the Settlement value for attorneys' fees, is reasonable.

### A.     Class Counsel Is Entitled To Compensation Under Either The Percentage Method Or The Lodestar Method, But The Percentage Method Is Preferred.

For more than a century, the Supreme Court has held that "where an attorney succeeds in creating a common fund from which members of a class are compensated for a common injury," the attorney is entitled to a reasonable fee.  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (citing *Trustees v. Greenough*, 105 U.S. 527 (1881); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)).  Awarding class counsel fees "serves the salutary purpose of encouraging counsel to pursue meritorious claims on behalf of a class of individuals who could not afford to litigate their individual claims." *Steiner v. Williams*, No. 99-101186, 2001 WL 604035, at *1 (S.D.N.Y. May 31, 2001).  Courts recognize that awards of fair attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and therefore "to discourage future misconduct of a similar nature." *In re Flag Telecom Holdings Ltd. Sec. Litig.*, No. 02-3400, 2010 WL 4537550,

at *23 (S.D.N.Y. Nov. 8, 2010) (citation omitted); *see In re Veeco Instruments Inc. Sec. Litig.*,

No. 05-01695, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007) (same).

Indeed, the contingency fee awarded to class counsel should be greater than the fees that

the same attorneys would charge their clients in non-contingency cases.  "No one expects a

lawyer whose compensation is contingent on success of his services to charge, when successful,

as little as he would charge a client who in advance has agreed to pay for his services, regardless

of success."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 396 (S.D.N.Y. 1999); *In re

Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *6 (same).[3]  Compensating Plaintiffs"

counsel for the risks assumed in bringing this action is essential, because "[s]uch actions could

not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund

for their efforts on behalf of the class."  *Hicks v. Morgan Stanley*, No. 01-10071, 2005 WL

2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

District courts in the Second Circuit may award attorneys' fees to prevailing class

counsel under either a "percentage of the fund" or "lodestar" method to compute fees in common

fund cases.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

However, the Second Circuit disfavors the lodestar method because it "create[s] an unanticipated

disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district

courts to engage in a gimlet-eyed review of line-item fee audits."  *Id.* at 122 (internal citation

omitted).  The percentage method is considered preferable "because it reduces the incentive for

counsel to drag the case out to increase the number of hours billed; also, fewer judicial resources

---

[3] *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008) (citing *Maley v. Del. Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) ("Courts have also recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature.")).

will be spent in evaluating the fairness of the fee petition." *Hicks*, 2005 WL 2757792, at \*9 (citation omitted).  Thus, "[t]he trend in this Circuit is toward the percentage method." *Wal-Mart*, 396 F.3d at 121; *see also In re Polaroid*, No. 03-8335, 2007 WL 2116398, at \*2 (S.D.N.Y. July 19, 2007); *McDaniel v. Cty. of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010).  In addition, the award must be based on "the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007); *see also Torres v. Gristede's Operating Corp.*, 519 Fed. Appx. 1, 5 (2d Cir. 2013) (unpublished) (calculating fees "on the basis of the total funds made available."); *Aros v. United Rentals, Inc.*, No. 10-73, 2012 WL 3060470 (D. Conn. July 26, 2012) ("In applying the common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts, have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement fund, even where amounts to be paid to class members who do not file claims will revert to the Defendants.").

Here, pursuant to the Settlement agreement, Class Counsel seeks attorneys' fees in the amount of $2,543,750, or 21.39% of the Settlement value, and $100,000 for actual litigation expenses, or 0.84% of the Settlement Value.  *See* Settlement agreement ¶ 8.2, ECF No. 125-1. Class Counsel's fee request falls in the low range of Class Counsel fees approved in comparable cases.  *See, e.g.*, *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11-8472, 2013 WL 1209563, at \*8 (S.D.N.Y. Mar. 21, 2013) (awarding attorneys' fees in the amount of 33% of the settlement fund," plus costs); *Beckman v. KeyBank, N.A.*, No. 12-7836, 2013 WL 1803736, at \*12 (S.D.N.Y. Apr. 29, 2013) (awarding attorneys' fees equal to 33% of $4.9 million settlement fund, plus costs); *Hayes v. Harmony Gold Mining Co.*, No. 08-03653, 2011 WL 6019219, at \*1 (S.D.N.Y. Dec. 2, 2011) (awarding attorneys' fees equal to 33.3% of $9 million settlement fund), *aff'd*, 509 F. App'x 21 (2d Cir. 2013); *In re Marsh Erisa Litig.*, 265 F.R.D. 128, 146 (S.D.N.Y.

2010) (awarding attorneys' fees equal to 33.33% of $35 million settlement, plus costs); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (fee equal to one-third of the settlement fund is reasonable and "consistent with the norms of class litigation in this circuit") (citing cases).

**B.    The Requested Fee is Justified Under The Percentage Method.**

A court applying the percentage method "sets some percentage of the recovery as a fee." *Goldberger*, 209 F.3d at 47 (citation omitted).  In doing so, the court considers six factors: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  *Id.* at 50 (internal citations and quotation marks omitted); *accord Polaroid*, 2007 WL 2116398, at *2.  Courts consider the same factors in applying the lodestar method.  *Id.*  All of the *Goldberger* factors argue for approval of Class Counsel's fee request.

**1.    The Time And Labor Expended By Class Counsel**

Facts supporting the first *Goldberger* factor, the time and labor expended by Class Counsel, are set forth in detail in their accompanying Declarations.[4]  Altogether, Class Counsel devoted at least 5,149.2 hours over the course of more than three years prosecuting this Action.[5]

---

[4] *See* Garber Decl.; Declaration of Paul M. Sod; Declaration of Peter S. Lubin; Declaration of Paul G. Neilan; Declaration of Jonathan Shub.

[5] Finkelstein, Blankinship, Frei-Pearson & Garber, LLP has eliminated 5 time keepers with less than 10 hours of time each.

*See* Declaration of Todd S. Garber ("Garber Decl.") ¶ 15; Declaration of Paul M. Sod ("Sod Decl.") ¶ 10; Declaration of Peter S. Lubin ("Lubin Decl.") ¶ 7; Declaration of Paul G. Neilan ("Neilan Decl.") ¶ 11; Declaration of Jonathan Shub ("Shub Decl.") ¶ 18.

Plaintiffs fully briefed two sets of motions to dismiss relating to the original and amended complaints; filed several discovery motions; served written discovery requests; and participated in eight depositions, of Mr. Hamlen and seven Gateway employees.  Garber Decl. ¶ 3, 5  Moreover, discovery involved a review of approximately 280 gigabytes of ESI.  *Id.*  Mr. Hamlen also retained an expert to investigate how to quantify class damages.  *Id.*  Although *Wagar* has not seen the same level of activity since its filing late last year, Class Counsel anticipates equally extensive discovery and motion practice on the same issues.[6]

Following arm's length negotiations by the Parties, including a two-day mediation, the Parties entered into the Class Action Settlement Agreement.  *See* ECF No. 125-1.  The Settlement Agreement resolves all of the claims asserted in the Actions and confers substantial benefits on the Settlement Class, consisting of all Gateway customers who enrolled in a residential variable rate plan and, at any time during the applicable statute of limitations period, paid Gateway variable rates for electricity and/or natural gas supply services, in New Jersey, New York, Pennsylvania, Maryland, Virginia, Kentucky, and Ohio.  This Court granted preliminary approval of the Settlement on April 5, 2019, certifying a class for settlement purposes and authorizing the dissemination of class notice.  ECF No. 126.

While litigating this matter, counsel for Plaintiffs and Defendant met telephonically and in person to discuss a comprehensive settlement of the claims of the Plaintiffs and the putative class.

---

[6] In *Eisig*, discovery and motion practice also occurred.  The Parties fully briefed a motion to dismiss and the appeal of the decision and order denying the motion to dismiss, and Gateway deposed the plaintiffs.  Sod Decl. ¶ 9.

Plaintiffs' counsel also met internally to review the strategy for and status of settlement negotiations. *See* Garber Decl. ¶¶ 6-8.  Finally, Plaintiffs' Class Counsel engaged in multiple mediation sessions before reaching an agreement to settle the Action.  *See* Garber Decl. ¶¶ 6-8, 10.  As part of Plaintiffs' investigation and to prepare for class certification and trial on the merits, Class Counsel also engaged the services of and consulted with an expert, Dr. Frank Felder, who provided his expertise in analyzing the manner in which Gateway set its rates and determining the extent to which Gateway's rates were in excess of rates charged by other ESCOs and local utilities.  *See* Garber Decl. ¶¶ 5, 9; Shub Decl. ¶ 7.

In addition to litigation-related activities, Class Counsel exhaustively investigated Plaintiffs' claims by communicating with Plaintiffs, reviewing their files, obtaining copies of the relevant contractual terms and conditions and samples of Defendant's marketing materials, researching what causes of action to assert against Gateway, and developing a theory of the case and litigation strategy. *See* Garber Decl. ¶¶ 5-7, 9.  They also identified the relevant energy markets and the rates available from local utilities and other independent energy suppliers or ESCOs.  *See Id.* ¶ 9.  Plaintiffs and Defendant also engaged in substantial discovery and exchange of documents and information, necessitating review and analysis by Class Counsel.  *See Id.* ¶¶ 3, 5, 9.

### 2.      The Magnitude And Complexity Of The Litigation

The second *Goldberger* factor is the magnitude and complexity of the litigation.  Here, the requested fee award is reasonable in light of the scope and difficulty of this action.  The Class itself is comprised of more than 117,153 members and Defendant has agreed to a settlement with a total Class Benefit of $11,893,750.  *See* Settlement agreement ¶¶ 2.5, 5.2, 8.2, ECF No. 125-1; Angeion Decl. ¶¶ 3-6.  By any measure, the magnitude of the case is substantial, fully justifying Class Counsel's investment of time and labor, and merits the requested fee award.

In addition, the litigation involved a number of complex legal and factual issues.  The magnitude and complexity of this action was even greater because of the multiple states in which Defendant is operating, the disclosures that Defendant made in each state and the prevailing electric and gas rates at the times when these disclosures were made.

If not for the Settlement, the need to research, brief, and develop factual submissions on class certification and summary judgment relating to these issues would have increased the expense, complexity, and duration of the litigation.  Moreover, assuming Plaintiffs' claims survived Defendant's opposition to class certification and its summary judgment motion, trial preparation would have required countless hours of additional work, including preparing fact and expert witnesses, identifying exhibits, preparing proposed jury instructions, and preparing cross-examination outlines.  The trial itself would consume significant judicial resources and would engender additional motion practice (including evidentiary motions and any dispositive motions filed during or at the close of trial).  Further, an appeal would have added to the complexity of the litigation.  This is especially likely in view of the experience of defense counsel in litigating consumer class actions.  *See In re Brown Co. Sec. Litig*., 355 F. Supp. 574, 592-93 (S.D.N.Y. 1973) (prestige of opposing counsel highlights complexity of litigation and challenges faced by class counsel).  The magnitude and complexity of the litigation weigh heavily in favor of the requested fee award.

### 3.     The Risk Of The Litigation

Litigation risk is the next *Goldberger* factor; as discussed above, Class Counsel and Plaintiffs themselves faced obstacles in successfully prosecuting this case.  The Second Circuit has recognized that the risk involved in prosecuting a class action is an important consideration in determining an appropriate fee award.  This factor is intended to recognize that cases taken on

a contingent fee basis entail risk of non-payment for the attorneys that prosecute them, and it embodies an assumption that contingency work is entitled to greater compensation than non-contingency work.  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 592.  Class Counsel received no compensation while incurring the risks of the litigation.  Moreover, there was no way to know whether Class Counsel would ever be compensated for its substantial commitment to this action. In fact, the case law is replete with unsuccessful class actions that provided no relief to the putative class and no resulting fee for class Counsel.  *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, No. 05-01695, 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007) (collecting cases) ("[T]he risk of non-payment in complex cases, such as this one, is very real.  There are numerous class actions in which class counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.  There is no guarantee of reaching trial, and even a victory at trial does not guarantee recovery.").

In fact, the Second Circuit recognizes that the risk of success is "'perhaps the foremost factor' to be considered in determining a fee award in class actions."  *Kemp-Delisser,* 2016 WL 6542707 at *16 (quoting *Goldberger*, 209 F.3d at 54); *see also Woburn Ret. Sys. v. Salix Pharms., Ltd.*, No. 14-8925, 2017 WL 3579892, *6 (S.D.N.Y. Aug. 18, 2017) ("risk of the litigation is one of the most important factors, if not the foremost factor, to consider when determining the reasonableness of fee.").  It is well-established that when lawyers undertake litigation on a contingency basis, they face the "significant risk of non-payment." *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010); *see also Woburn Ret. Sys.*, 2017 WL 3579892, at *6 (lawyers who undertake litigation on contingency basis "assume a great deal of risk"); *Aros v. United Rentals, Inc.,* No. 10-00073, 2012 WL 3060470, at *6 (D. Conn. July 26, 2012) (efforts of class counsel were "without compensation, and their entitlement to be paid has

been wholly contingent upon achieving a good result").  Here, Class Counsel represented the

Plaintiffs and the class purely on a contingency fee basis -- with no up-front retainer fees or

allowance for expenses, nor any compensation from any other source -- and prosecuted this case

for more than three years.  Consequently, Class Counsel faced the very real risk that they would

ultimately receive nothing for the hard work and long hours, as well as the millions of dollars in

cash outlays expended litigating.  *See, e.g. Richards v. Direct Energy Servs., LLC*, 915 F.3d 88

(2d Cir. 2019) (affirming summary judgment in favor of ESCO).  Throughout the litigation, there

was no assurance of success or compensation.  The requested fee award is entirely reasonable in

light of the risks incurred by Class Counsel.

### 4.      The Quality Of Representation

Fourth, *Goldberger* instructs courts to consider the quality of Class Counsel's

representation; in this case, that quality is reflected in the reputation of Class Counsel, the

experience of the attorneys principally involved in these actions and above all, the manner in

which they prosecuted the Action from the pleadings, through motion practice and discovery, to

the settlement negotiations and the instant motion for final approval.  Class Counsel have

extensive experience prosecuting and resolving complex class actions.  *See* Garber Decl. ¶¶ 10-

14, Exhibit 1; Sod Decl. ¶ 7; Neilan Decl. ¶¶ 4-8; Lubin Decl. ¶ 3; Shub Decl. ¶¶ 10-17, Exhibit

1.  These firms have a particular expertise in litigating class action cases on behalf of consumers.

*See Id.*

The Court has observed first-hand the skills and abilities of Class Counsel, and Class

Counsel enjoy a strong reputation in the area of complex and class action litigation.  Further, as

demonstrated by their firm resumes, the various attorneys comprising Class Counsel have been

appointed class counsel in numerous other cases and are highly experienced and knowledgeable

in the area of complex and class action litigation.  *See* Garber Decl., Exhibit 1; Sod Decl. ¶ 7;

Neilan Decl. ¶¶ 4-8; Lubin Decl. ¶ 3; Shub Decl., Exhibit 1.

The Settlement negotiated with Defendant is a highly favorable outcome for the Class,

and is the direct result of the creativity, diligence, hard work, and skill brought to bear by Class

Counsel at every stage of the proceedings.  Throughout the litigation, Class Counsel have put the

best interests of the Class ahead of their own, negotiating the most favorable settlement terms

possible and then agreeing to a fee to be paid by Gateway, rather than the Class, which in no way

diminishes or erodes the benefits received by Class members.  Class Counsel's exemplary

prosecution of this class action weighs strongly in favor of the proposed fee award.

The high quality of the opposition that Class Counsel faced is a further testament to the

quality of Class Counsel's representation.  Gateway is represented by skilled and highly regarded

Class Counsel from prestigious firms with well-deserved reputations for vigorous advocacy in

the defense of complex civil cases.  Courts have repeatedly recognized that the caliber of the

opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality

of the plaintiffs' counsel's performance, and in these cases, it supports approval of the requested

fee.  *See, e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. at 148 (reasonableness of fee was supported

by fact that defendants were represented by first-rate attorneys who vigorously contested

plaintiffs' claims and allegations).  As a result, under the rubric of quality of representation,

Class Counsel's requested fee is appropriate.

### 5.  The Requested Fee In Relation To The Settlement

The fifth factor requiring consideration is the relationship of the fee to the settlement so

that the court can ensure that the requested fee is "fair and reasonable in relation to the recovery

and compares favorably to fee awards" in other common fund cases.  *See, e.g.*, *Hayes v.*

*Harmony Gold Mining Co.*, No. 08-03653, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding attorneys' fees equal to 33.3% of $9 million settlement fund), *aff'd*, 509 F. App'x 21 (2d Cir. 2013); *Beckman v. KeyBank, N.A.*, No. 12-7836, 2013 WL 1803736, at *12 (S.D.N.Y. Apr. 29, 2013) (awarding attorneys' fees equal to 33% of $4.9 million settlement fund, plus costs).  Here, as noted above with regard to the percentage-of-recovery discussion, Class Counsel's requested fee that represents less than 21.39% of the overall settlement value is in the low range of percentage of the Benefit and also when considering the lodestar figure.

Finally, it is also relevant that, to date, no class member has objected to the request, a factor that courts in this Circuit have routinely determined as being a supportive factor.  *See, e.g., Stinson v. City of New York*, 256 F. Supp. 3d 283, 290 (S.D.N.Y. 2017) (noting absence of any objections to requested fee); *Hall v. ProSource Techs. LLC*, No. 14-2502, 2016 WL 1555128, at *16 (E.D.N.Y. Apr. 11, 2016) (absence of any objection to requested fee "while . . . not dispositive of the reasonableness of the fee request, 'does lend support for approval of the award.'") (internal quotation omitted).  Accordingly, not only is the $2,543,750 award for fees Class Counsel has requested, and that Gateway has agreed to pay, substantially below awards from courts within this Circuit in similar circumstances, but it has also not resulted in objections by any Class members -- thus making it appropriate in relation to the settlement.

### 6.    Public Policy Considerations

Finally, a consideration of the public policy aspects of the settlement is appropriate; "[w]hen determining whether a fee award is reasonable, courts consider the social and economic value of the class action, 'and the need to encourage experienced and able counsel to undertake such litigation.'"  *Surdu v. Madison Glob., LLC,* No. 15-6567, 2018 WL 1474379, at *12 (S.D.N.Y. Mar. 23, 2018) (citations omitted).  The Settlement Agreement in the instant case

provides substantial benefits to the public as well as the individual Gateway consumers.  It serves public policy -- as embodied in state consumer fraud statues and the common law of contract -- by compensating consumers, holding Gateway accountable for its misleading advertising, and deterring future deceptive practices by ESCOs generally and Gateway specifically: other similar entities will be on notice that they will suffer unwanted cost, inconvenience, bad publicity, and legal exposure if they fail to accurately advertise the energy rates they intend to charge their customers.  "Plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever."  *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 246 (4th Cir. 2010).

Moreover, the fee request does not bestow a windfall on Class Counsel (*see* lodestar cross-check *infra*).  Therefore, the policy of awarding fees in a lower range to account for economies of scale and to prevent windfalls is not at issue here.  Simply put, there is no reason to depart from the $2,543,750 Class Counsel fee that Gateway has agreed to pay, as this amount falls squarely within the range of fees normally approved within this Circuit under either the percentage of the fund or lodestar methodology, and any reduction would be against public policy as it would discourage future Class Counsel from bringing similar cases and reward the alleged wrongdoer for the benefit of neither the Class or the public at large.

Taking into account all the *Goldberger* factors, an attorneys' fee award of $2,543,750 to Class Counsel comprises a reasonable fee and should be approved.

## C.    The Fee Is Justified Under The Lodestar/Multiplier Method.

Application of the lodestar method confirms the reasonableness of Class Counsel's request.  Despite its criticism of the lodestar method, the Second Circuit has advised that it

remains potentially useful as a "cross-check" against the percentage method.  *Goldberger*, 209

F.3d at 50.  "Of course, where used as a mere cross-check, the hours documented by counsel

need not be exhaustively scrutinized." *Id.* (citation omitted).

Under the lodestar method, the court multiplies the number of hours each attorney spent

on the case by each attorney's reasonable hourly rates, and then the court adjusts that lodestar

figure (by applying a multiplier) "to reflect litigation risk, the complexity of the issues, the

contingent nature of the engagement, the skill of the attorneys, and other factors."  *In re Flag*

*Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *23; s*ee also Maley*, 186 F. Supp. 2d at

370 (explaining that the lodestar "is typically enhanced by a multiplier to reflect consideration of

a number of factors, including the contingent nature of success and the quality of the attorney's

work") (citation omitted).  "In contingent litigation, lodestar multiples of over 4 are routinely

awarded by courts, including this Court." *In re Telik*, 576 F. Supp. 2d at 590 (a multiplier of 4.65

was "well within the range awarded by courts in this Circuit and courts throughout the country")

(citing *Maley*, 186 F. Supp. 2d at 369).[7]

The fee requested for these cases is more than justified under the lodestar method.  Class

Counsel reasonably devoted in excess of 5,149.2 hours to this action, including time spent

---

[7] *See, e.g., Zeltser v. Merrill Lynch & Co., Inc.*, No. 13-1531, 2014 WL 4816134, at *10
(S.D.N.Y. Sept. 23, 2014) (multiplier of 5.1 "falls within the range granted by courts");
*Hernandez,* 2013 WL 1209563, at *9 (awarding lodestar multiplier of 3.8, holding it "well within
the range of multipliers that have been granted by courts in this Circuit and elsewhere" and
noting that "Courts regularly award lodestar multipliers of up to eight times lodestar, and in some
cases, even higher multipliers.") (collecting cases); *Spicer v. Pier Sixty LLC,* No. 08-10240, 2012
WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("In contingent litigation, lodestar multiples of
over 4 are routinely awarded by courts.") (quoting *In re Telik*, 576 F. Supp. 2d at 590); *Ramirez
v. Lovin' Oven Catering Suffolk, Inc.*, No. 11-520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24,
2012) (granting 6.8 multiplier); *deMunecas v. Bold Food, LLC*, No. 09-440, 2010 WL 3322580,
at *10 (S.D.N.Y. Aug. 23, 2010) ("Courts regularly award lodestar multipliers from 2 to 6 times
lodestar."); *Maley,* 186 F. Supp. 2d at 371 ("modest multiplier of 4.65 is fair and reasonable").

researching the facts and the law and reviewing documents produced by Defendant, drafting and revising the complaint, conducting discovery and motion practice, conferring with Plaintiffs and the expert, negotiating the settlement, and drafting settlement papers. *See* Garber Decl. ¶¶ 15-16. This is collectively $2,795,538.45 in time based on current billing rates, as detailed in the declarations of Class Counsel. *See Id.* "[T]he American Lawyer recently reported that the median billing rate for partners at many leading law firms exceeds $900/hour. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26.[8]  Not surprisingly, Class Counsel's more modest hourly rates have been approved by courts across the country. *See, e.g., Villanueva v. Wells Fargo Bank, N.A.*, No. 13-5429 (S.D.N.Y. Feb. 13, 2017) (Smith, J.), ECF No. 116; *Bowman v. Wells Fargo Bank, N.A.*, No. 14-648 (S.D.N.Y. Feb. 13, 2017) (Smith, J.), ECF No. 126; *Whittenburg v. Bank of America, N.A.*, No. 14-947 (S.D.N.Y. July 20, 2016) (Briccetti, J.), ECF No. 119; *In re HIKO Energy LLC Litigation*, No. 14-1771 (S.D.N.Y. May 9, 2016) (Briccetti, J.), ECF No. 93; *Adler v. Bank of America, N.A.*, No. 13-4866 (S.D.N.Y. Jan. 29, 2016) (Briccetti, J.), ECF No. 89-1; *Reed v. Friendly's Ice Cream, LLC*, No. 15-298 (M.D. Pa. Jan. 31, 2017), ECF No. 105; *Yoeckel v. Marriott International, Inc.*, No. 703387/2015 (N.Y.

---

[8] *See, e.g., In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-8557, 2014 WL 7323417, at *14 (S.D.N.Y. Dec. 19, 2014) (approving hourly billing rates ranging from $425 to $825 for attorneys); *In re Nissan Radiator/Transmission Cooler Litig.,* No. 10-7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013) (finding reasonable attorneys' fees based on hourly rates ranging from $750 (partner) to $650 (associate)); *Chin v. RCN Corp.*, No. 08-7349, 2010 WL 3958794, at *5-6 (S.D.N.Y. Sept. 8, 2010) (approving a "blended" hourly rate of approximately $605); *In re Converse Tech., Inc. Sec. Litig.*, No. 06-1825, 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) (hourly rates up to $880 were "not extraordinary for top New York law firms"); *In re Telik*, 576 F. Supp. 2d at 589-90 (noting that hourly rates of $700-$750 for partners were consistent with the rates charged by the defense bar for similar work, and that comparable rates have been found reasonable by other courts for class action work).

Sup. Ct. May 3, 2017); *St. Joseph Health System Medical Information Cases*, JCCP No. 4716
(Cal. Sup. Ct. Feb. 3, 2016).

Applying Class Counsel's hourly rates, which are reasonable and well within the range
typically charged by similarly well qualified Class Counsel in this District, yields a lodestar
negative multiplier of 0.91.[9]  This multiplier is in the low range of lodestar multipliers routinely
awarded by courts in this Circuit.  *See, e.g., Kemp-Delisser*, 2016 WL 6542707 at *17 (multiplier
of 2.77 "well within the range of lodestar multipliers that are regularly approved by district
courts in the Second Circuit"); *Hernandez*, 2013 WL 1209563, at *9 (awarding lodestar
multiplier of 3.8, holding it "well within the range of multipliers that have been granted by courts
in this Circuit and elsewhere" and noting that "Courts regularly award lodestar multipliers of up
to eight times lodestar, and in some cases, even higher multipliers.") (collecting cases); *Spicer v.
Pier Sixty, LLC,* No. 08-10240, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("In
contingent litigation, lodestar multiples of over 4 are routinely awarded by courts.") (quoting *In
re Telik, Inc. v. Sec. Litig.,* 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008)); *deMunecas v. Bold Food,
LLC*, No. 09-440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("Courts regularly award
lodestar multipliers from 2 to 6 times lodestar."); *Silberblatt v. Morgan Stanley & Morgan
Stanley DW Inc.,* 524 F. Supp. 2d 425, 429, 434 (S.D.N.Y. 2007) (4.4 lodestar multiplier
reasonable where claims were relatively straightforward, but proof of such claims would have
required plaintiff to "overcome difficult obstacles" due to subjective nature of precious metals

---

[9] The Supreme Court has approved the use of current hourly rates to compensate for inflation and
loss of use of funds.  *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); s*ee also In re NASDAQ
Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 n. 25 (S.D.N.Y. 1998); *In re Union Carbide
Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163-64 (S.D.N.Y. 1989) (citing
cases).

industry.).  The fee requested in the instant case is more than justified under the lodestar method as well as the percentage-of-recovery method.

> **D.      The Reaction Of The Class Is Overwhelmingly Favorable.**

Courts give "great weight" to the reaction by members of the Class to a class action settlement. *Maley*, 186 F. Supp. 2d at 374 (citation omitted).  "The court considers both the number and quality of objections when determining how a class has reacted to an attorney fee request."  *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 996 (D. Minn. 2005).

Pursuant to the schedule approved by the Court for the dissemination of the Class Notice, the Settlement Administrator mailed the Short Form Settlement Notice to Class members on May 3, 2019, after confirming and updating the mailing addresses using the National Change of Address database, and re-mailed notices returned undeliverable after conducting a one-time skip trace.  Declaration of Steven R. Platt of Angeion Group, LLC Regarding Settlement Administration ("Angeion Decl.") ¶¶ 5-7.  The Settlement Administrator also established a website at www.GatewayEnergySettlement.com, containing all the information required by this Court and a dedicated toll-free phone number for inquiries from Class members.  Angeion Decl. ¶ 9.

No class members have objected to the fee request.  *See* Angeion Decl. ¶ 14.  This speaks to the reasonableness of the fee request.  *See, e.g.*, *In re Telik,* 576 F. Supp. 2d at 593-94 ("That only one objection [after dissemination of 54,000 copies of the class notice] to the fee request was received is powerful evidence that the requested fee is fair and reasonable."); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 912 F. Supp. 97, 103 (S.D.N.Y. 1996) (holding that an "isolated expression of opinion" should be considered "in the context of thousands of class

members who have not expressed themselves similarly"); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d at 996 ("Here, of the over 265,000 notices sent, only seven of the thirteen objections received concern the attorney fee award"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) ("Notice of the fee request and the terms of the settlement were mailed to 300,000 class members, and only two objected. We agree with the District Court such a low level of objection is a 'rare phenomenon.'").

Thus, the "overwhelmingly positive response to date by the Class attests to the approval of the Class with respect to both the Settlement and the fee and expense application." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *29.

## III.   THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Class Counsel's fee application includes a request for reimbursement of litigation expenses that were reasonably incurred and necessary to the prosecution of this action. *See* Garber Decl. ¶ 21; Sod Decl. ¶ 10; Neilan Decl. ¶ 10; Lubin Decl. ¶ 6; Shub Decl. ¶ 24. These expenses are properly recovered by Class Counsel. *See In re China Sunergy Sec. Litig.*, No. 07-7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'").

As set forth in detail in the declarations filed herewith, Class Counsel incurred $112,706.75 in litigation expenses on behalf of the Class to prosecute the case. *See* Garber Decl. ¶ 21; Sod Decl. ¶ 10; Neilan Decl. ¶ 10; Lubin Decl. ¶ 6; Shub Decl. ¶ 24. Awarding expenses of $100,000 pursuant to Section 8.2 of the Settlement Agreement, or only 0.84% of the Settlement value to Class Counsel for costs will serve to help reimburse Class Counsel for these expenses. *See, e.g., In re Sony Corp. SXRD Rear Projection TV Mktg., Sales Practices & Prods.*

*Liab. Litig.*, No. 09-2102, 2010 WL 3422722, at *8-9 (S.D.N.Y. Aug. 24, 2010) (approving flat payment covering fees and expenses).

All of the expenses were reasonable and necessary to the prosecution of this action, and are of the type that law firms typically bill to their clients and that courts typically approve for reimbursement.[10]  *See* Garber Decl. ¶ 21; Sod Decl. ¶ 10; Neilan Decl. ¶ 10; Lubin Decl. ¶ 6; Shub Decl. ¶ 24.  Moreover, having accepted the case on a contingency basis, Class Counsel "made a concerted effort to avoid unnecessary expenses and economized where possible."  *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *19 ("Because the expenses here were incurred with no guarantee of recovery, Lead Counsel has a strong incentive to keep them at a reasonable level, and did so."); *see* Garber Decl. ¶ 21; Sod Decl. ¶ 10; Neilan Decl. ¶ 10; Lubin Decl. ¶ 6; Shub Decl. ¶ 24.

## IV.   PLAINTIFFS ARE ENTITLED TO THE REQUESTED SERVICE AWARD

Providing service awards to consumers who come forward to represent a class is a necessary and important component of any class action settlement.  *See Viafara v. MCIZ Corp.*, No. 12-7452, 2014 WL 1777438, at *16 (S.D.N.Y. May 1, 2014) ("Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.  It is important to compensate

---

[10] *See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02-1484, 2007 WL 313474, at *24 (S.D.N.Y. Feb. 1, 2007) (awarding expenses for "computer research, reproduction/duplication, secretarial overtime, phone/fax/postage, messenger/overnight delivery, local transportation/meals, filing fees and attorney services") (internal quotations omitted); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *10 (awarding expenses including "consultant and expert fees, photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for service of subpoenas to witnesses, on-line research, creation of a document database, messenger service, postage and next day delivery, long distance and facsimile expenses, transportation, [and] travel"); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (same).

plaintiffs for the time they spend and the risks they take. The Court finds reasonable service awards of $12,500 to Viafara for the MCIZ Settlement and $12,500 for the JAD Settlement.") (citations omitted). "Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risk incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Sukhnandan v. Royal Health Care of Long Island LLC, No. 12-4216,* 2014 WL 3778173, at *16 (S.D.N.Y July 31, 2014).

In examining the reasonableness of service awards, courts consider (1) the time and effort expended by the class representatives during the litigation; (2) any burdens sustained by the class representatives, including personal risk; and (3) the ultimate recovery. *See Roberts v. Texaco*, *Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

In particular, the class representatives put considerable time and effort and undertook significant burden in this case in responding to Defendant's extensive discovery requests, which required the class representatives to perform repeated search and production, and to undergo lengthy depositions.  Garber Decl. ¶¶ 5, 23.  Moreover, courts have recognized the risks inherent in filing suit as a named plaintiff on behalf of a class against an entity with which all class members transact business. *See Dial Corp v. News Corporation.*, 317 F.R.D. at 439 (S.D.N.Y 2016) ("[T]he decision to fire the first shot on behalf of the Class was fraught with risks. Notably, the named Plaintiffs in this case assumed a substantial risk in antagonizing a longstanding, power business partner..."). Based on the Class Representatives' acceptance of risk with the litigation, the incentive payment to each of them of $5,000 is entirely appropriate. *See* Settlement Agreement ¶ 8.7, ECF No. 125-1.

The requested payments are well deserved and fall well within the range of incentive awards approved in prior cases.  *Yuzary v. HSBC Bank USA, N.A.*, No. 12-3693, 2013 WL 5492998, at *12 (S.D.N.Y. Oct. 2, 2013) (awarding $10,000 each to named plaintiffs); *Guippone v. BH S & B Holdings, LLC*, No. 09-1029, 2011 WL 5148650, at *8 (S.D.N.Y. Oct. 28, 2011) (awarding class representative $10,000 because he "assisted with the preparation of the complaints, provided counsel with relevant documents in their possession and assisted counsel in the investigation of his claims[, and] was deposed by defendant Holdco"); *Torres v. Gristede's Operating Corp.*, No. 04-3316, 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010), *aff'd*, 519 Fed. Appx. 1 (2d Cir. 2013) (unpublished) (approving service awards of $15,000 each for 15 named plaintiffs, comprising 6.4% of the $3.5 million settlement); *Clark v. Ecolab Inc.*, No. 04-4488, 2010 WL 1948198, at *6 (S.D.N.Y. May 11, 2010) (granting service awards of $10,000 to each of the seven named plaintiffs); *Polaroid*, 2007 WL 2116398, at *3 (citing *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting case law supports payments of between $2,500 and $85,000 to representative plaintiffs in class actions).  The service award of $5,000 for each of the Plaintiffs constitutes a mere 0.04% of the settlement relief valued at $11,893,750.  *See* Settlement agreement ¶¶ 2.5, 8.2, 8.7, ECF No. 125-1.  The service award is therefore reasonable.[11]

---

[11] *See Asare v. Change Grp. of New York, Inc.*, No. 12-3371, 2013 WL 6144764, at *3 (S.D.N.Y. Nov. 18, 2013) (service awards totaling $16,000 or 9.6% of the $165,000 settlement); *Matheson v. T-Bone Rest., LLC*, No. 09-4214, 2011 WL 6268216, at *10 (S.D.N.Y. Dec. 13, 2011) (approving service awards of $45,000 and $5,000 for each of two named plaintiffs which totaled roughly 10% of the $495,000 fund); *Johnson v. Brennan*, No. 10-4712, 2011 WL 4357376, at *21 (S.D.N.Y. Sept. 16, 2011) (approving $10,000 service awards to four named plaintiffs from a $440,000 settlement fund); *Reyes v. Altamarea Grp., LLC*, No. 10-6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 to each three plaintiffs and a service award of $5,000 to one plaintiff, totaling $50,000, or roughly 17% of the $300,000 fund); *Reyes v. Buddha-Bar NYC*, No. 08-2494, 2009 WL 5841177, at *5 (S.D.N.Y. May 28, 2009) (awarding payments of $7,500 to three named plaintiffs from $710,000 fund); *Wright v. Stern*,

Finally, the service award request was disclosed in the notice and did not garner a single objection.

For these reasons, the Court should order service award payments to Plaintiffs in the amount requested.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the request for attorneys' fees and costs and service awards in the amounts indicated.

Dated:     White Plains, New York
           July 17, 2019

           **FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**

           By: <u>*/s/ Todd S. Garber*</u>
           Todd S. Garber
           D. Greg Blankinship
           Jean M. Sedlak
           445 Hamilton Avenue, Suite 605
           White Plains, New York 10601
           Tel: (914) 298-3283
           tgarber@fbfglaw.com
           gblankinship@fbfglaw.com
           jsedlak@fbfglaw.com

           *Attorneys for Plaintiffs and the Settlement Class*

---

553 F. Supp. 2d 337, 342 (S.D.N.Y. 2008) (approving $50,000 awards to each of 11 named plaintiffs in $11.8 million employment discrimination settlement).